No. 16-30080

_____

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**AMMON BUNDY,**
**RYAN PAYNE,**
**RYAN BUNDY,**
**BRIAN CAVALIER,**
**and BLAINE COOPER,**

**Defendants-Appellants.**

_____

**Interlocutory Appeal & Petition for Writ of Mandamus**

**from the United States District Court for the District of Oregon**

**Portland Division**

_____

**APPELLANTS' OPENING BRIEF**

**Lisa Hay, OSB #980628**
**Federal Public Defender**
**Rich Federico, IN Bar #23818-89**
**Assistant Federal Public Defender**
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon 97204**
**(503) 326-2123 Telephone**
**(503) 326-5524 Facsimile**
**Attorneys for Defendant Ryan Payne**

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF ISSUE.....................................................................................2

STATEMENT OF THE CASE...............................................................................2

      A.    Nature of the Case........................................................................2

      B.    Relevant Facts and Procedural History......................................3

      C.    Standard Of Review .................................................................9

      D.    Custody Status...........................................................................9

SUMMARY OF THE ARGUMENT .....................................................................9

ARGUMENT ...................................................................................................11

     I.    By Following The Requirement That One Prosecution Finish Before Another Begins, The Federal District Courts Are Not Placed In The Position Of Refereeing Priority Between Federal Prosecutors In Different Districts, Which Implicates A Panoply Of Constitutional Criminal Procedure Rights As Well As The Separation Of Powers Doctrine ...........................................................................................11

     II.    The Nevada Magistrate Court Lacked Authority To Issue The Writs Of Habeas Corpus Ad Prosequendum Through *Ex Parte* Proceedings In Nevada To Remove Defendants From Oregon, Where Their Rights To Counsel, Speedy Trial, And Due Process Had Attached ...................15

      A.    The Nevada Magistrate Judge Lacked Jurisdictional Authority To Issue The Writs For Federal Pretrial Detainees In Oregon In *Ex Parte* Proceedings .............................................................16

      B.    Issuance Of The Writs Ad Prosequendum Violated The Priority Of Jurisdiction And Principles Of Comity And Runs Contrary To Congressional Intent .............................................................21

      C.    Enforcement Of The Writs Ad Prosequendum Will Violate Defendants' Right To A Speedy Trial, Right To Effective Assistance Of Counsel, And Right To Due Process of Law ....23

i

III.    The District of Oregon's Refusal To Quash A Writ of Habeas Corpus Ad Prosequendum Issued by the United States District Court for the District of Nevada Purporting to Require Defendants To Be Transported To Nevada For First Appearances Falls Within The Collateral Order Doctrine Or, In The Alternative, Warrants Issuance Of A Writ Of Mandamus...........................................................................29

CONCLUSION .........................................................................................33

ii

# TABLE OF AUTHORITIES

## CASES

*Andreiu v. Ashcroft,*
253 F.3d 477 (9th Cir. 2001) ..............................................................22

*Bauman v. United States District Court,*
557 F.2d 650 (9th Cir. 1977) ................................................................1

*Branch.” Mistretta v. United States,*
488 U.S. 361 (1989)............................................................................15

*Carbo v. United States,*
364 U.S. 611 (1961)..................................................................... 16, 17

*Chapman v. California,*
386 U.S. 18 (1967)..............................................................................25

*Clark v. Martinez,*
543 U.S. 371 (2005)............................................................................20

*Cohen v. Beneficial Indus. Loan Corp.,*
337 U.S. 541 (1949)..............................................................................1

*Digital Equipment Corp. v. Desktop Direct, Inc.,*
511 U.S. 863 (1994)............................................................................30

*Doe v. Busby,*
661 F.3d 1001 (9th Cir. 2011) ..............................................................9

*Ex parte Bollman,*
8 U.S. (4 Cranch) 75 (1807) ...............................................................16

*Firestone Tire & Rubber Co. v. Risjord,*
449 U.S. 368 (1981)............................................................................29

*Geders v. United States,*
425 U.S. 80 (1976)..............................................................................25

*Hamdi v. Rumsfeld,*
542 U.S. 507 (2004)..................................................................... 20, 22

*Holloway v. Arkansas,*
435 U.S. 475 (1978)............................................................................25

*Hyde v. Stone,*
61 U.S. (20 How.) 170 (1857) ............................................................27

iii

*In re Ellis,*
    356 F.3d 1198 (9th Cir. 2004) ...........................................................................12

*Kentucky v. Stincer,*
    482 U.S. 730 (1987)............................................................................... 14, 18

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)......................................................................................13

*Mempa v. Rhay,*
    389 U.S. 128 (1967)......................................................................................14

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003) ..........................................................................1

*Mohawk Indus., Inc. v. Carpenter,*
    558 U.S. 100 (2009)................................................................................. 30, 31

*Morrissey v. Brewer,*
    408 U.S. 471 (1972)......................................................................................13

*Nken v. Holder,*
    556 U.S. 418 (2009)......................................................................................23

*Ponzi v. Fessenden,*
    258 U.S. 254 (1922)................................................................. 11, 21, 26, 29

*Powell v. Alabama,*
    287 U.S. 45 (1932)............................................................................. 18, 24, 27

*Reynolds v. Thomas,*
    603 F.3d 1144 (9th Cir. 2010) ......................................................................21

*Rinaldi v. United States,*
    434 U.S. 22 (1977)........................................................................................12

*Robinson v. Shell Oil Co.,*
    519 U.S. 337 (1997)......................................................................................23

*Rumsfeld v. Padilla,*
    542 U.S. 426 (2004)......................................................................................17

*Santobello v. New York,*
    404 U.S. 257 (1971)......................................................................................27

*Setser v. United States,*
    132 S. Ct. 1463 (2012)..................................................................................21

*Stamphill v. Johnston,*
    136 F.2d 291 (9th Cir. 1943) ........................................................................27

iv

*Strickland v. Washington,*
    466 U.S. 668 (1984) ...................................................................... 24

*Swint v. Chambers County Comm'n,*
    514 U.S. 35 (1995) ........................................................................ 30

*United States v. Alverson,*
    666 F.2d 341 (9th Cir. 1982) ....................................................... 14

*United States v. Anaya,*
    779 F.2d 532 (9th Cir. 1985) ......................................................... 9

*United States v. Bergeson,*
    425 F.3d 1221 (9th Cir. 2005) ..................................................... 24

*United States v. Fei Ye,*
    436 F.3d 1117 (9th Cir. 2006) ..................................................... 32

*United States v. Harrington,*
    749 F.3d 825 (9th Cir. 2014) ......................................................... 9

*United States v. Irwin,*
    612 F.2d 1182 (9th Cir. 1980) ..................................................... 24

*United States v. Kelly,*
    661 F.3d 682 (1st Cir. 2011) ....................................................... 19

*United States v. Kowalczyk,*
    805 F.3d 847 (9th Cir. 2015) ......................................................... 9

*United States v. Mauro,*
    436 U.S. 340 (1978) ............................................................... 16, 17

*United States v. Montes-Ruiz,*
    745 F.3d 1286 (9th Cir. 2014) ..................................................... 22

*United States v. Powell,*
    24 F.3d 28 (9th Cir. 1994) ............................................................. 9

*United States v. Santiago,*
    46 F.3d 885 (9th Cir. 1995) ......................................................... 27

*United States v. Sherman,*
    821 F.2d 1337 (9th Cir. 1987) ..................................................... 14

*Will v. Hallock,*
    546 U.S. 345 (2006) ...................................................................... 31

## STATUTORY AUTHORITIES

18 U.S.C. § 3161 .............................................................................. 28

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. App 1395-1398 (1976 ed.) ...................................................15

28 U.S.C. § 519 .............................................................................. 11, 13

28 U.S.C. § 1291 ...........................................................................1, 29

28 U.S.C. § 1651 ................................................................................1

28 U.S.C. § 2241 ...................................................................... 16, 17, 18

28 U.S.C. § 2251 ..............................................................................22

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. VI ........................................................................28

## STATEMENT OF JURISDICTION

The district court has jurisdiction over the underlying criminal prosecution under 18 U.S.C. § 3231. The district court permitted the government, through writs of habeas corpus ad prosequendum, to involuntarily transfer the defendants from Oregon, where they have been arraigned and are preparing for trial, to Nevada to face simultaneously a separate, complex criminal proceeding. CR 334; ER 1.[1] Because the district court order would immediately and irreparably affect the defendants' rights to due process, speedy trial, and effective assistance of counsel, this Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1291 under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (The collateral order doctrine applies to "that small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."). Alternatively, this Court has jurisdiction to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651. *See Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir. 2003) (en banc); *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654 (9th Cir. 1977).

---

[1] CR refers to the Clerk's Record. ER Refers to the Excerpts of Record.

1

## STATEMENT OF ISSUE

After arraignment and detention on an indictment in one federal district court, does the non-consensual transfer of the defendant to another federal district court for arraignment on a different charge, before the resolution of the first case, lack a jurisdictional basis and infringe on the due process-based rules for priority of warrants, the Speedy Trial Act, and the Sixth Amendment right to counsel?

## STATEMENT OF THE CASE

### A.     Nature of the Case

This is an unprecedented case in which the defendants, who are in custody, have been arraigned and are being tried in the District of Oregon on a complex, multi-count indictment, are now facing transportation by the government, over their objection, to the District of Nevada to be arraigned and face a second complex, multi-count indictment in Nevada. This interlocutory appeal involves Ryan Payne, Ammon Bundy, Ryan Bundy, Brian Cavalier, and Blaine Cooper.[2] Unless this Court intervenes, the defendants will be subjected to simultaneous prosecutions on

---

[2] Blaine Cooper was not included to the Notice of Appeal filed at the District Court.  However, he is similarly situated to the other defendants and joins in the appeal.  Also, the Oregon District Court's order impacts defendants Peter Santilli and Joseph O'Shaughnessy, collaterally, as the district court's order directing the transport of the defendants included directives to the Marshal regarding the transport of Santilli and O'Shaughnessy, who are both in the primary custody of Nevada. However, Mr. Santilli and Mr. O'Shaughnessy are not involved in this appeal.

unrelated charges in two districts, roughly 1,000 miles apart, based on the prosecution's tactical considerations. This Court should reverse the district court order to preserve the normal course of criminal proceedings and to vindicate the due process-based priority of detainers, the right to a speedy trial, and guarantee of the effective assistance of counsel.

### B.    Relevant Facts and Procedural History

Starting on January 2, 2016, a group of American citizens arrived at the Malheur National Wildlife Refuge, thirty miles south of Burns, Oregon, after participating in organized protests regarding federal land use policies. Some of the protesters, including the defendants, remained at the National Wildlife Refuge, making statements to the press and conferring with public officials. Many protesters exercised their right to bear arms under the Second Amendment. The defendants remained on the National Wildlife Refuge until January 26, 2016, when, while driving to the neighboring Grant County, Oregon, to attend a public meeting, Ammon Bundy, Ryan Bundy, Ryan Payne, and Brian Cavalier, among others, were arrested on the roadside. Immediately after the arrest of these defendants, law enforcement officers shot and killed the driver of one of the cars.

The United States Department of Justice filed a criminal complaint against Ryan Payne, Ammon Bundy, Ryan Bundy, Brian Cavalier, and other defendants in

the United States District Court for the District of Oregon on January 26, 2016. CR 14; ER 109. Mr. Payne, Mr. Ammon Bundy, Mr. Ryan Bundy, and Mr. Cavalier made their first appearance in Portland, Oregon, on January 27, 2016, where the Oregon District Court appointed counsel for the defendants and ordered them detained. CR 19, 20, 21, 22; ER 108, 107, 106, 105. The government obtained and filed a single count Indictment against 16 co-defendants on February 3, 2016. CR 58; ER 102. Prior to being arraigned, the defendants specifically asserted their rights and made a demand for a speedy trial. CR 183; ER 100. Claiming that "the discovery issues in defendants' case will be some of the most complicated in the history of the district," the government requested that the Oregon District Court declare the Oregon case to be complex. CR 185 at 2; ER 97. The defendants were arraigned on the Indictment on February 24, 2016, and again reiterated their demand for a speedy trial and objected to the government's motion to designate the case as complex. CR 185, 207; ER 96.

On March 8, 2016, the government filed a Superseding Indictment that added charges and joined Mr. Cooper and co-defendants from another case in the District of Oregon, *United States v. Cooper*, Case No. 3:16-cr-00064-JO. CR 250; ER 90. This brought the number of co-defendants to 26. All allegations on the Superseding

4

Indictment arise from the alleged events that occurred at the Malheur National Wildlife Refuge.[3]

On March 9, 2016, the Oregon District Court overruled the defendants' objections and declared the case to be complex due to the number of defendants (many of whom are incarcerated), the volume of discovery, the extensive pretrial litigation anticipated, the distant location of the so-called "crime scene," and "an overwhelming need for additional time to prepare for and to be ready for trial at a firm trial date." CR 289 at 4-5; ER 83-84. As of the date of this filing, there remain 26 named defendants in the Oregon case. CR 334; ER 1. The Oregon District Court stated that the cases will be tried by September 2016 "or earlier." CR 340 at 19:21-23; ER 26.

On February 10, 2016, Cliven Bundy, father of defendants Ammon Bundy and Ryan Bundy, was arrested on a warrant issued in Nevada Case No. 2:16-mj-00127-PAL at the Portland airport where he had arrived from Nevada. *See United States v. Bundy*, Documents Received from Other Court, No. 3:16-mj-00014 (D. Or. Feb. 11, 2016) CR 1; ER 258. Cliven Bundy was arrested on a warrant from alleged

---

[3] During a joint status hearing on March 9, 2016, the district court ordered that all motions filed and orders issued in *United States v. Cooper* are deemed part of this matter and do not need to be re-filed. CR 285; ER 86.

events that occurred in Nevada on or about April 2014. NV CR 2; ER 259. Cliven Bundy was detained in Oregon, then transferred to Nevada where he made a first appearance. NV CR 2, 3; ER 258, 257. On February 17, 2016, the Department of Justice obtained and filed an Indictment in the District of Nevada against Cliven Bundy, Ammon Bundy, Ryan Bundy, Ryan Payne, and Peter Santilli for alleged events that occurred in Nevada in April 2014. NV CR 5; ER 206. Defendants Brian Cavalier, Blaine Cooper, and others were added as co-defendants in Nevada by Superseding Indictment. NV CR 27; ER 142 (*United States v. Cliven Bundy*, No. 2:16-cr-00046-GMN-PAL (D. Nev. Mar. 2, 2014)).

Although the government knew that the defendants were represented by counsel in Oregon, the government sought and obtained, through *ex parte* proceedings in the Nevada district court, and with no notice to the defendants or their Oregon counsel, writs of habeas corpus ad prosequendum requiring the defendants to be transported to Nevada "for arraignment and from time to time and day to day thereafter[.]" CR 344; ER 72; *see also* CR 334; ER 1. Like the Oregon case, the Nevada case is likely to be declared complex. CR 340 at 46:6-7, 11-12; ER 53. The government declared its intention to proceed with both cases on a "parallel track." CR 340 at 20:6; ER 27.

6

On March 16, 2016, Ryan Payne filed his Unopposed Emergency Motion for Court Order Prohibiting United States Marshals from Removing Ryan Payne and Listed Defendants from the District of Oregon. CR 312. In the motion, the defendants argued that the Nevada district court lacked authority to issue writs ad prosequendum and disrupt the pending Oregon proceedings, asserting that such an interruption would violate their rights to a speedy trial, effective assistance of counsel, and due process of law. CR 312. On March 16, 2016, the district court granted an Interim Order prohibiting the United States Marshals from removing Mr. Payne and all other defendants being detained in Case No. 3:16-cr-00051-BR from the District of Oregon. CR 313; ER 68.

On March 22, 2016, the district court conducted a "semi-joint" proceeding, in which the defendants, their Oregon counsel, and representatives of the Department of Justice in Oregon appeared in person, while United States Magistrate Judge Peggy Leen for the District of Nevada, representatives of the Department of Justice in Nevada, and defense counsel appointed in Nevada for Ryan Payne appeared by video link. CR 334; ER 1. During the "semi-joint" hearing, the district court sought the consent of the defendants to make their first appearance in the Nevada case by video link. CR 340 at 7:12; ER 14. The defendants refused to consent to such an important appearance by video and objected to the prospect of facing two

simultaneous prosecutions on different charges in different jurisdictions. CR 340 at 12:6-7; ER 19. The Oregon District Court then sought and obtained assurances from the Nevada court that the defendants would be returned to Oregon within roughly ten days if they were transported to Nevada on the writs. The Nevada court "forecast that there is not any legal impediment to the return of the defendants to the District of Oregon" despite the announcement by Mr. Payne's Nevada counsel that she would object to Mr. Payne's removal from Nevada if he is transported there. *See* CR 340 at 30:23, 31:4-6, 45:23-24, 57:2-4; ER 37, 38, 52, 64.

On March 22, 2016, the Oregon District Court vacated its Interim Order and denied the defendants' motion seeking protection from the writs. The Oregon District Court ruled that the Nevada court had the power to issue the writs ad prosequendum because "the Court is not aware of any precedent declaring that co-equal United States District Courts do not have the power to cooperate in the administration of their respective criminal proceedings." CR 334 at 3-4; ER 3-4. The Oregon District Court also ruled that the defendants' arguments pertaining to speedy trial, due process, and effective assistance of counsel were premature. CR 334 at 4; ER 4. Unless this Court intervenes, the United States Marshal has been ordered to transport the defendants from Portland, Oregon, to Las Vegas, Nevada, on April 13, 2016, and return them to Oregon by April 25, 2016. CR 334 at 6; ER 6.

8

### C.    Standard Of Review

This Court reviews *de novo* violations of right to counsel and due process of law, the issuance of writs of habeas corpus, issues of jurisdiction, and statutory interpretation. *United States v. Kowalczyk*, 805 F.3d 847, 856 (9th Cir. 2015) (right to counsel); *United States v. Harrington*, 749 F.3d 825, 828 (9th Cir. 2014) (due process); *Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011) (habeas corpus); *United States v. Powell*, 24 F.3d 28, 30 (9th Cir. 1994) (jurisdiction); *United States v. Anaya*, 779 F.2d 532, 534 (9th Cir. 1985) (statutory interpretation).

### D.    Custody Status

The defendants are all being held in the pretrial custody of the United States Marshal's Service in the District of Oregon.

### SUMMARY OF THE ARGUMENT

This case involves the unprecedented interruption of a federal prosecution by forcing defendants, after arraignment and before trial in a complex federal district court case, to be transported against their will to simultaneously face charges in another complex criminal case almost 1,000 miles away. The district court recognized that important rights are at issue: "[T]he parties have raised important questions that are fundamental to court power and to the unusual situation here where two very complicated cases have been initiated by the United States in two different

9

districts involving so many of the same defendants who have been detained while these proceedings go forward." CR 340 at 54:1-6; ER 61. While ultimately failing to protect the defendants' rights, the district court should never have been placed in the position of negotiating competing jurisdictional demands of another district court. The fundamental tenets of priority of jurisdiction and preservation of the defendants' constitutional rights foreclose the use of a writ ad prosequendum to involuntarily force the defendants away from their attorneys and the forum litigating their case. The proceedings below exceeded the district courts' authority because (1) the Nevada District Court lacked the jurisdictional authority to issue, through *ex parte* proceedings, the writs of habeas corpus ad prosequendum, (2) enforcement of the writs violates the fundamental tenets of priority and comity on which the federal court system is based, and (3) the defendants' constitutional rights are compromised by transportation to face a second, simultaneous complex trial in Nevada. The collateral order doctrine provides this Court the jurisdiction to correct the errors of the district court below. In the alternative, this Court should issue a writ of mandamus to prevent the irreparable harm that will result from the shuttling of pretrial detainees to another jurisdiction.

**ARGUMENT**

I. **By Following The Requirement That One Prosecution Finish Before Another Begins, The Federal District Courts Are Not Placed In The Position Of Refereeing Priority Between Federal Prosecutors In Different Districts, Which Implicates A Panoply Of Constitutional Criminal Procedure Rights As Well As The Separation Of Powers Doctrine.**

The Oregon District Court's order for a non-consensual transfer to face another federal prosecution in a different jurisdiction, after arraignment and before trial, is unprecedented for good reason. The government does not consist of 94 fiefdoms operated as independent prosecutorial units. Rather, the Attorney General of the United States is responsible for all prosecutions that occur in all districts. *See* 28 U.S.C. § 519 ("[T]he Attorney General shall supervise all litigation to which the United States . . . is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys . . . in the discharge of their respective duties."). Just as states and the federal government must prevent prosecutions from conflicting, the chief rule for maintaining rational interactions between separate federal prosecutions should adopt the analogy from commercial transactions: "[T]he court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." *See Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922). What the government cannot do is

11

force the district court judge to relieve prosecutors of their obligation to make what may be hard choices about the order of prosecution by allowing two prosecutions on different charges, from different acts at different times, to proceed at the same time in different jurisdictions.

The priority of prosecutions is simple: the government controls when and where charges are filed. After the first charge is filed and adversary proceedings commence, any other charges are lodged as detainers to notify custodians that the next charge must be addressed before the defendant is released. In an extreme case, if the government was dissatisfied with the order of prosecution, the prosecution could move to dismiss the first charge without prejudice under Rule 48(a) of Federal Rules of Criminal Procedure and allow the next charge to take precedence. Out of deference to prosecutorial discretion, the district court must grant the government's motion unless dismissal is "clearly contrary to manifest public interest." *Rinaldi v. United States*, 434 U.S. 22, 30 (1977); *In re Ellis*, 356 F.3d 1198, 1209-10 (9th Cir. 2004). The defendant would have notice and an opportunity to persuade the district court judge that dismissal without prejudice should not be granted and to argue the consequences of the government's tactical choices.

By allowing the government to avoid its priority decisions, the defendants were denied a range of basic trial rights while the Oregon judge was forced to act as

a prosecutorial referee inconsistent with the separation of the Executive Branch's prosecutorial powers from the Judicial Branch's neutral decision-making powers. There is a long litany of constitutional criminal procedure violations inherent in the government's attempt to forcibly transfer the defendants out of the state and district wherein the crimes were allegedly committed. Further, the government's order placed the Oregon District Court judge in the untenable position of having to negotiate the fraught conflict when two federal prosecutions in different districts seek to litigate the culpability of the same defendants at the same time.

The prosecution moving for a writ in Nevada that it knew would also directly impact the Oregon case, when viewed correctly as involving the unitary United States acting as a single prosecutorial entity under § 519, violated a series of basic constitutional rights:

- The government, after the initiation of adversary proceedings and appointment of counsel, moved for a judicial order materially affecting the Oregon prosecution without notice to the defendant or an opportunity to be heard in violation of basic procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

- In violation of the Sixth Amendment, the defendants had no counsel to assist them at a "stage of a criminal proceeding where substantial rights of a criminal

13

accused may be affected," here the determination that Nevada would seek to interrupt the Oregon proceedings. *Mempa v. Rhay*, 389 U.S. 128, 134-36 (1967).

- The government initiated an *ex parte* contact with a judicial officer regarding a material issue in the Oregon prosecution in violation of due process. *See United States v. Alverson*, 666 F.2d 341, 348-50 (9th Cir. 1982).

- By engaging in the *ex parte* contact, the government violated the defendants' constitutional right to be present where his presence "would contribute to the fairness of the procedure," *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987), as well as the more "far-reaching" protections of Rule 43. *United States v. Sherman*, 821 F.2d 1337, 1339 (9th Cir. 1987).

- In violation of the rules of priority, the defendants were subjected to a court order that interrupted the prosecution in a single district in a manner that subverts the Speedy Trial Act and the right to counsel.

The government's actions, based solely upon its own tactical considerations, placed the Oregon District Court judge in an untenable position. By forcing the Oregon District Court judge into the position of refereeing the competing efforts of the Oregon and Nevada prosecutors to litigate at the same time, the Executive Branch undermined "the authority and independence of one or another coordinate

14

Branch." *Mistretta v. United States*, 488 U.S. 361, 382 (1989). Instead of deciding issues purely between the parties in the case under its jurisdiction, the Oregon judge had to triangulate the demands of the Nevada prosecutor, who obtained the *ex parte* order from the Nevada judge, regarding charges filed later in time and in a different district. Pursuant to the Interstate Agreement on Detainers Act, 18 U.S.C. App. 1395-1398 (1976 ed.), which applies to the federal government, the Nevada case should have simply been lodged as a detainer until the Oregon case was resolved. The government's conflicting invocation of judicial authority from a competing district, outside of the consent of the defendant, places the Judiciary outside its appropriate role.

II.    **The Nevada Magistrate Court Lacked Authority To Issue The Writs Of Habeas Corpus Ad Prosequendum Through *Ex Parte* Proceedings In Nevada To Remove Defendants From Oregon, Where Their Rights To Counsel, Speedy Trial, And Due Process Had Attached.**

The government's *ex parte* actions renders invalid the writs issued by the Nevada district court and the Oregon District Court's order allowing the writs to be executed. As applied in this context, the Nevada magistrate judge lacked the authority to issue writs of habeas corpus ad prosequendum in *ex parte* proceedings and order the defendants to be removed from Oregon in the middle of a case. Although federal courts, generally, have the authority to issue writs of habeas corpus ad prosequendum to remove prisoners from state proceedings, there is no

concomitant authority to remove them from pending federal proceedings. This is especially so where the first-in-time federal case has begun and where the defendants and their counsel are not advised of the application for a writ and subsequently object to disruption of the normal course of the federal prosecution.

    **A.**    **The Nevada Magistrate Judge Lacked Jurisdictional Authority To Issue The Writs For Federal Pretrial Detainees In Oregon In *Ex Parte* Proceedings.**

Federal courts have limited statutory authority to issue writs of habeas corpus under 28 U.S.C. § 2241(a). *Rasul v. Bush*, 542 U.S. 466, 473-75 (2004). Although the initial statutory authority for issuing writs of habeas corpus did not expressly include the writ ad prosequendum, the Supreme Court interpreted the words "habeas corpus" to include the writ "necessary to remove a prisoner in order to prosecute him in the proper jurisdiction wherein the offense was committed." *Carbo v. United States*, 364 U.S. 611, 615 (1961) (citing *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 98 (1807)). In 1948, a court's authority to issue the writ ad prosequendum was made explicit with the enactment of 28 U.S.C. § 2241, which provides that the "writ of habeas corpus shall not extend to a prisoner unless . . . [i]t is necessary to bring him into court to testify or for trial." 28 U.S.C. § 2241(c); *see also United States v. Mauro*, 436 U.S. 340, 357-58 (1978) (reviewing case law and legislative history of writs ad prosequendum). Where a defendant is already in pretrial custody pending

16

trial, the plain language of "necessary to bring him into court . . . for trial" does not literally apply. 28 U.S.C. § 2241(c)(5).

The statute includes a jurisdictional limiting clause authorizing courts to issue the writ only "within their respective jurisdictions." 28 U.S.C. § 2241(a). The Supreme Court has interpreted this language to require that "the court issuing the writ have jurisdiction over the custodian." *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (citation omitted). Congress added this limiting clause to the habeas statute in 1867 to avoid the "inconvenient [and] potentially embarrassing" possibility of judicial interference in a distant court. *Id.* (alteration in original) (citation omitted). In 1961, the Supreme Court recognized an exception to these jurisdictional limits for writs ad prosequendum to obtain *state* court prisoners. *Carbo,* 364 U.S. at 612-13 (approving of writ issued by federal court in California to bring for trial a prisoner serving a state sentence in New York). As the Court has since explained, the authority of federal courts to secure the appearance of prisoners in state custody for federal trials had "never been doubted." *Mauro*, 436 U.S. at 358, 360 ("The issuance of *ad prosequendum* writs by federal courts has a long history, dating back to the First Judiciary Act. We can therefore assume that Congress was well aware of the use of such writs by the Federal Government to obtain *state* prisoners[.]") (second emphasis added). However, neither this Court nor the Supreme Court have held that

the jurisdictional limitations in 28 U.S.C. § 2241(a) may be ignored when the sought-after person is a pretrial detainee in federal custody, as opposed to state custody. Instead, the concerns identified by Congress when setting territorial limits on writs —the "inconvenient [and] potentially embarrassing" possibility of judicial interference in a distant court—should directly apply here. *Rumsfeld*, 542 U.S. at 442 (alteration in original).

This is especially so when considering that the writs in this case were issued without providing the defendants with notice or an opportunity to be heard. CR 334 at 3; ER 3 (noting the *ex parte* nature of the writ proceedings); *see Powell v. Alabama*, 287 U.S. 45, 68 (1932) ("[N]otice and hearing are preliminary steps essential to the passing of an enforceable judgment, and . . . they, together with a legally competent tribunal having jurisdiction of the case, constitute basic elements of the constitutional requirement of due process of law."). Because the issuance of the writs ad prosequendum directly impacted the defendants' ability to remain in Oregon and confront the charges against them in that district, the defendants were deprived of their right to counsel and their right to be present at a critical stage of the proceedings. *See, e.g., Stincer*, 482 U.S. at 745 ("[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.").

18

The fact that defense counsel has been unable to locate a single case that explicitly authorizes federal district courts to use writs ad prosequendum to force a defendant to stand trial in a second matter—against a defendant's consent and after constitutional rights have attached in the first case—is further indication that this unprecedented procedure should be reversed. In its response to the defendants' emergency motion below, the government cited one case in support of its position that the Nevada court had the authority to issue the writs: *United States v. Kelly*, 661 F.3d 682 (1st Cir. 2011). Although it is true that the defendant in *Kelly* was transported from the pretrial detention of one federal district court to another by writ ad prosequendum, the opinion simply did not address the authority of the court to issue the writ. Instead, it appears that the defendant and prosecution were cooperating by filing joint motions to stay time under the Speedy Trial Act and attempting to reach a global resolution. *Kelly*, 661 F.3d at 684. The First Circuit addressed the interplay between the Speedy Trial Act and writs ad prosequendum but did not address the authority of one federal district court to interrupt, against the defendant's consent, the proceedings of another federal district court and force the defendant to defend against two complex trials simultaneously. Therefore, *Kelly* is not applicable to the "important questions that are fundamental to court power and to the unusual situation here where two very complicated cases have been initiated

19

by the United States in two different districts involving so many of the same defendants who have been detained while these proceedings go forward." CR 340 at 54:1-6; ER 61.

The Oregon District Court found that the writ ad prosequendum issued by the Nevada magistrate judge was valid because "the Court is not aware of any precedent declaring that co-equal United States District Courts do not have the power to cooperate in the administration of their respective criminal proceedings." CR 334 at 3-4; ER 3-4. However, the absence of a statutory prohibition does not equal statutory authorization, especially where the enforcement of the writs ad prosequendum will violate the defendants' constitutional rights and force them to defend against two complex criminal cases roughly 1,000 miles apart. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 544 (2004) (calling for Congress to unmistakably articulate when a statute will operate in "derogation of customary liberty"). This Court should avoid the serious constitutional problems created by the enforcement of the writs ad prosequendum and hold that Congress did not authorize one federal district court to interfere with the pending criminal case of another district court through the use of writs ad prosequendum. *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) (If one statutory construction "would raise a multitude of constitutional problems, the other should

prevail—whether or not those constitutional problems pertain to the particular litigant before the Court.").

**B.  Issuance Of The Writs Ad Prosequendum Violated The Priority Of Jurisdiction And Principles Of Comity And Runs Contrary To Congressional Intent.**

Allowing the writs from Nevada to stand would contravene settled principles of priority of detainers and due process of law that form the bedrock of basic fairness and order in the federal criminal justice system. "Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration." *Reynolds v. Thomas*, 603 F.3d 1144, 1152 (9th Cir. 2010) (internal quotation marks omitted) (citation omitted), *abrogated on other grounds by Setser v. United States*, 132 S. Ct. 1463 (2012). In order to preserve "harmonious and effective operation" among courts, "the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." *Ponzi*, 258 U.S. at 260, 263. Construing the habeas statute to allow one federal court to disrupt proceedings in another federal court would eviscerate this "chief rule" of comity and orderly procession identified by the Supreme Court in *Ponzi*. *Id*. at 260.

21

Congress authorized federal courts to intervene in pending state court proceedings. 28 U.S.C. § 2251(a)(1) ("A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding."). However, Congress provided no parallel authority for one federal district court to stay another federal district court's proceedings. *See United States v. Montes-Ruiz*, 745 F.3d 1286, 1291-93 (9th Cir. 2014) (noting a "broader discretion bestowed upon federal judges to make the concurrent/consecutive determination when the other sentence is a state sentence rather than a federal one"). Congress's omission of this comparable authority regarding federal proceedings must be regarded as intentional. *See Andreiu v. Ashcroft*, 253 F.3d 477, 480 (9th Cir. 2001) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (alteration in original) (citation and internal quotation marks omitted). If Congress intended to authorize federal district courts to use writs ad prosequendum to interrupt the proceedings of co-equal federal district courts, it needed to say so clearly and unmistakably. *See Hamdi*, 542 U.S. at 544

22

(requiring a clear congressional directive when a statute will operate in "derogation of customary liberty"); *Nken v. Holder*, 556 U.S. 418, 426 (2009) ("[S]tatutory interpretation turns on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole'") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Congress did not do so.

### C. Enforcement Of The Writs Ad Prosequendum Will Violate Defendants' Right To A Speedy Trial, Right To Effective Assistance Of Counsel, And Right To Due Process of Law.

The district court ordered that the defendants be transported to Nevada pursuant to the writs ad prosequendum on one occasion for a period of approximately 10 days. CR 340 at 55:12; ER 62.[4] The district court erroneously asserted that this isolated transport would not violate the defendants' constitutional rights and that any argument to the contrary was premature. CR 334 at 4; ER 4; CR 340 at 55:2-6; ER 62. However, the defendants' Sixth Amendment rights to counsel have already been violated by the issuance of the writs ad prosequendum without notice and opportunity to be heard in Nevada, and the interference with counsel and delay of trial—even by one day—is real and not speculative.

---

[4] After the hearing and *ex parte* communications with the Marshal, the district court extended that period of time to 12 days. CR 334 at 6 n. 4; ER 6.

Removal of the defendants from the District of Oregon will violate the defendants' rights to the effective assistance of counsel for the remainder of these criminal proceedings and in both cases. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to effective assistance of counsel includes the right to regularly and consistently consult with one's attorney before trial. *Powell v. Alabama*, 287 U.S. 45, 59 (1932); *see also Strickland v. Washington*, 466 U.S. 668, 688 (1984) (imposing upon counsel an affirmative "dut[y] to consult with the defendant on important decisions and to keep the defendant informed of important developments . . ."); *United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005) ("A client's confidence in his lawyer, and continuity of the attorney-client relationship, are critical to our system of justice."); *United States v. Irwin*, 612 F.2d 1182, 1185 (9th Cir. 1980) ("It is clear that government interference with a defendant's relationship with his attorney may render counsel's assistance so ineffective as to violate his Sixth Amendment right to counsel and his Fifth Amendment right to due process of law."). The Supreme Court has recognized the time between arraignment and trial to be "vitally important" and "perhaps the most critical period of the proceedings." *Powell*, 287 U.S. at 57.

24

As counsel advised the Oregon judge, "[I]t is almost impossible for a lawyer to have an effective relationship for his or her client when they are a thousand miles away." CR 340 at 45:8-11; ER 52. The district court's contention that the ten- or twelve-day absence of the defendants will not impair counsels' effective representation overlooks the fact that "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Holloway v. Arkansas*, 435 U.S. 475, 489 (1978) (quoting *Chapman v. California,* 386 U.S. 18, 23 (1967)); *see also Geders v. United States,* 425 U.S. 80, 91(1976) ("[A]n order preventing petitioner from consulting his counsel 'about anything' during a *17-hour overnight recess* between his direct- and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment.") (emphasis added).[5] During transportation by the

---

[5] In the district court, the government argued that "there are telephones, there are a number of means of communications in this modern era that would—that—there's access to the defendant that will certainly be sufficient in order for them to prepare." CR 340 at 29:3-6; ER 36. The available evidence in the record does not support the government's position. In addition, the defendants also note the multiple instances during the March 22, 2016 hearing in which individuals had trouble hearing or the court reporter was unable to transcribe words that were said during the video conference. *See* CR 340 at 8:9-11; 27:9; 27:16; 30:25; 35:7; 36:8; 37:2-4, 12, 14; 42:3-4; ER 15, 34, 34, 37, 42, 43, 44, 49. These difficulties in communication occurred using the sophisticated video-link systems employed by the federal district courts.

Marshal, the location of prisoners and their access to telephones is curtailed for security reasons. *See* USMS Policy Directive 16.2(F)(2)(c) (prohibiting prisoners from conversing with anyone other than other prisoners and custodial authorities and prohibiting the Marshals from allowing a prisoner to place telephone calls "while in custody of USMS personnel"). There will be a complete denial of consultation with counsel during transportation and concomitant inability to prepare for trial during that time.

In addition, despite the advisory opinion of the Nevada magistrate judge that there would be no legal impediment to the defendants being returned to Oregon from Nevada, Mr. Payne's defense counsel in Nevada intends to file motions to keep Mr. Payne in Nevada until his trial is completed there, and the government intends to proceed with parallel prosecutions. CR 340 at 20:6, 34:11; ER 27. Thus, if the writs are executed, the defendants are placed in an untenable situation: either consent to "ping-pong" transports between Oregon and Nevada, *see* CR 340 at 16:5; ER 23, or sacrifice unimpaired communication with their counsel in one location by remaining in the other location. *See Ponzi*, 258 U.S. at 260 ("One accused of crime, of course, cannot be in two places at the same time. He is entitled to be present at every stage of the trial of himself in each jurisdiction with full opportunity for defense."). The impediments to effective representation placed on the defendants once the writs are

effectuated will impair the ability of defense counsel to identify witnesses, uncover evidence, develop a theory of the facts, and otherwise prepare for trial. The defendants "must not be stripped of [their] right to have sufficient time to advise with counsel and prepare [their] defense." *Powell*, 287 U.S. at 59.

The Attorney General, through the Oregon prosecution, elected to begin proceedings in Oregon, and the Oregon District Court has assumed jurisdiction over the defendants, requiring that the defendants' cases here must be completed first. *See Stamphill v. Johnston*, 136 F.2d 291, 292 (9th Cir. 1943) ("Courts of the United States are bound to proceed to judgment * * * in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction.") (quoting *Hyde v. Stone*, 61 U.S. (20 How.) 170, 175 (1857)). The defendants should not be punished for the failure of the government to properly coordinate its cases. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done."); *see also United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995) (holding that prosecution cannot escape responsibilities by operating piecemeal through different federal prosecutorial entities).

Allowing the writs to be executed will violate the defendants' rights to a speedy trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The defendants' rights to a speedy trial have been triggered in Oregon, where they were arrested, indicted, and arraigned. 18 U.S.C. § 3161(c)(1) ("[T]he trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."). The defendants demanded speedy trial, prior to and during the arraignment. CR 183; ER 100. The court declared the case to be complex based upon the government's assertion that the discovery issues in the Oregon case "will be some of the most complicated in the history of the district." CR 185 at 2; ER 97.

However, the speedy trial clock has not yet been triggered in Nevada for these defendants because they have not yet appeared in that district. Were the defendants to be transported and arraigned, the speedy trial clock would be triggered in that district as well. This would create the untenable situation of placing the defendants on trial in two jurisdictions at once. To repeat the Supreme Court's words: "One accused of crime, of course, cannot be in two places at the same time. He is entitled

28

to be present at every stage of the trial of himself in each jurisdiction with full opportunity for defense." *Ponzi*, 258 U.S. at 260. During time in transit and away, the defendants would be unable to prepare for the Oregon trial, consequently delaying and extending the time for trial.

III. **The District of Oregon's Refusal To Quash A Writ of Habeas Corpus Ad Prosequendum Issued by the United States District Court for the District of Nevada Purporting to Require Defendants To Be Transported To Nevada For First Appearances Falls Within The Collateral Order Doctrine Or, In The Alternative, Warrants Issuance Of A Writ Of Mandamus.**

The unique and unprecedented nature of the issues presented in this appeal demonstrate the need for appellate review within the ambit of the collateral order doctrine.

Although appellate jurisdiction is generally limited to the final decisions of the district courts under 28 U.S.C. § 1291, the Supreme Court has recognized the collateral order doctrine as a narrow exception to the final decision requirement of § 1291. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374-75 (1981). Under the collateral order doctrine, this Court has jurisdiction over interlocutory appeals of pretrial district court orders that (1) "conclusively determine the disputed question;" (2) "resolve an important issue completely separate from the merits of the action;" and (3) are "effectively unreviewable on appeal from a final judgment." *Id.* at 375.

The March 22, 2016, district court order meets all three of these factors. First, the order clearly and unequivocally denies the defendants' motion to remain in Oregon until the conclusion of the Oregon proceedings and requires the United States Marshal for the District of Oregon to transport Defendants for first appearances in Nevada. The district court's order is the "final word on the subject addressed." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (internal quotations omitted). Thus, this case meets the first factor of the collateral order doctrine.

Second, this interlocutory appeal focuses solely on the validity and execution of the Nevada writs, which will impact the defendants' constitutional and statutory rights. It does not require this Court to examine the underlying innocence or guilt of those accused. The district court recognized that "[t]he parties have raised *important* questions that are fundamental to court power" and also recognized "the *unusual* situation here where two very complicated cases have been initiated by the United States in two different districts involving so many of the same defendants who have been detained while these proceedings go forward." CR 340 at 54:1-6; ER 61 (emphasis added); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) ("The second condition insists upon '*important* questions separate from the merits.'") (emphasis added by *Mohawk* court) (quoting *Swint v. Chambers County*

30

*Comm'n*, 514 U.S. 35, 42 (1995)). The defendants meet the second collateral order doctrine factor.

Third, unless the Court grants this interlocutory appeal, the defendants will be transported to Nevada and thereafter face two simultaneous, complex criminal proceedings approximately 1,000 miles apart. The rights at stake—once lost—will be lost forever and will undermine the legitimacy of the proceedings while impairing constitutional and statutory rights of the highest order. The crux of the analysis of the third collateral order doctrine factor "is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk Indus.*, 558 U.S. at 107 (quoting *Will v. Hallock*, 546 U.S. 345, 352-53 (2006)). There will be no meaningful remedy for the defendants once they are forced to appear in Nevada; they will be required to defend against two complex cases at once. Honoring the defendants' request to hear this issue would at least present the defendants with the potential to avoid two simultaneous proceedings and the deleterious impact those two proceedings will have on their cases and rights. It would also—by deciding the issue before trial—be in the interests of judicial efficiency and mitigate the governments' massive advantage over the defendants. *See Will*, 546 U.S. at 352-53 (indicating that factors like "honoring the separation of powers, preserving the efficiency of government

and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual" are "value[s] of a high order").

In the alternative, even if the Court were to determine that it lacked jurisdiction under the collateral order doctrine—a point the defendants do not concede—the Court would have jurisdiction under the All Writs Act to issue a writ of mandamus directing the district court to order the defendants held in Oregon until the conclusion of the Oregon proceedings. The notice of interlocutory appeal functions as an alternative request for mandamus relief. *See Miller,* 335 F.3d at 895 (treating notice of appeal as a petition for a writ of mandamus). This Court has set out five factors to consider regarding the issuance of a writ of mandamus:

> (1) whether the petitioner has no other adequate means to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems, or issues of law of first impression. A petitioner need not establish all five factors, and we will weigh the factors together based on the facts of the individual case.

*United States v. Fei Ye,* 436 F.3d 1117, 1121-22 (9th Cir. 2006) (internal citations omitted). The greater weight of these factors strongly militates in favor of mandamus relief. The defendants have no alternative, adequate means to obtain the relief they

32

seek, and denying appellate review of this important issue will not only waste governmental resources, it will also violate many of the defendants' most sacred constitutional rights. The district court itself acknowledged that the issues are "important" and that the situation is "unusual." Because each of the mandamus factors favors relief, the Court should grant an alternative writ of mandamus if the collateral order doctrine is found not to apply.

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court hear the present appeal—either under the collateral order doctrine or as a writ of mandamus—and reverse the district court's order, vacate the writs of habeas corpus ad prosequendum, and grant such further relief as law and justice require.

RESPECTFULLY SUBMITTED this 30th day of March, 2016.

s/ *Rich Federico*
Rich Federico
Attorney for Defendant Ryan Payne

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **CA No. 16-30080** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMMON BUNDY,** | ) | |
| **RYAN PAYNE,** | ) | |
| **RYAN BUNDY,** | ) | |
| **BRIAN CAVALIER,** | ) | |
| **and BLAINE COOPER,** | ) | |
| | ) | |
| **Defendants-Appellants.** | ) | |

_____

## CERTIFICATE OF RELATED CASES
_____

I, Rich Federico, undersigned counsel of record for Defendant-Appellant, Ryan Payne state, pursuant to the Ninth Circuit Court of Appeals Rule 28-2.6, that I know of no other cases that should be deemed related.

DATED: March 30, 2016.

s/ *Rich Federico* _____
Rich Federico

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **CA No. 16-30080** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMMON BUNDY,** | ) | |
| **RYAN PAYNE,** | ) | |
| **RYAN BUNDY,** | ) | |
| **BRIAN CAVALIER,** | ) | |
| **and BLAINE COOPER,** | ) | |
| | ) | |
| **Defendants-Appellants.** | ) | |

_____

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
_____

This brief is submitted pursuant to Fed. R. App. P. 32(a)(7)(B) and (C) and

Ninth Circuit Rule 32-1, because:

      ⊠     it is a principal brief that exceeds 30 pages

      ☐     it is a reply brief that exceeds 15 pages

and I certify that it is proportionately spaced, has a typeface of 14 points or more and

contains 7,709 words.

      DATED this March 30, 2016.

                               s/ *Rich Federico*_____

                               Rich Federico

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 30, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ *Jennifer Lillie*
Jennifer Lillie