No. 16-30080

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE,

V.

AMMON BUNDY, RYAN PAYNE, RYAN BUNDY,
BRIAN CAVALIER, AND BLAINE COOPER,

DEFENDANTS-APPELLANTS.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
HONORABLE ANNA J. BROWN, UNITED STATES DISTRICT JUDGE
D.C. NO. 3:16-CR-00051-BR

ANSWERING BRIEF OF PLAINTIFF-APPELLEE

BILLY J. WILLIAMS
UNITED STATES ATTORNEY
DISTRICT OF OREGON
KELLY A. ZUSMAN
APPELLATE CHIEF
ETHAN D. KNIGHT
GEOFFREY A. BARROW
CRAIG J. GABRIEL
ASSISTANT UNITED STATES ATTORNEYS
1000 SW THIRD AVENUE, SUITE 600
PORTLAND, OREGON 97204-2902
TELEPHONE: (503) 727-1000

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ ii

Introduction .......................................................................................................... 1

Statement of Jurisdiction .................................................................................. 2

Statement of Issues Presented ......................................................................... 2

Defendants' Custody Status .............................................................................. 2

Statement of the Facts ....................................................................................... 2

Summary of the Argument ................................................................................ 7

Argument

A.     Standard of Review .................................................................................. 8

B.     The Collateral Order Doctrine Does Not Apply .................................. 8

C.     The Extraordinary Mandamus Remedy Is Inappropriate in this Case ............. 13

Conclusion ........................................................................................................... 16

Statement of Related Cases .............................................................................. 17

Certificate of Compliance ................................................................................. 18

## TABLE OF AUTHORITES
### FEDERAL CASES

*Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977) .................................................. 14

*Benvin v. U.S. District Court, District of Nevada*, 791 F.3d 1096 (9th Cir. 2015) .................. 2

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949) ...........................9, 10, 12, 13

*Miller v. Gammie*, 335 F. 3d 889 (9th Cir. 2003) (en banc) .................................................. 13

*Will v. United States*, 389 U.S. 90 (1967) ........................................................................ 13

*United States v. Allsup,* 573 F.2d 1141 (9th Cir. 1978) ........................................................ 12

*United States v. Austin*, 416 F.3d 1016 (9th Cir. 2005) ...........................................10, 12, 13

*United States v. Beltran Valdez,* 663 F.3d 1056 (9th Cir. 2011) ...................................... 9, 10

*United States v. Guerrero,* 693 F.3d 990 (9th Cir. 2012)................................................... 8, 13

*United States v. Lopez-Espindola,* 632 F.2d 107 (9th Cir. 1980) ......................................... 12

*United States v. Montoya,* 827 F.2d 143 (7th Cir. 1987)...................................................... 12

*United States v. Rice*, 776 F.3d 1021 (9th Cir. 2015) ........................................................ 14

*United States v. Romero-Ochoa*, 554 F.3d 833 (9th Cir. 2009)......................................8, 9, 14

*United States v. Stoner*, 799 F.2d 1253 (9th Cir. 1986) ...................................................... 15

*United States v. Tillman*, 756 F.3d 1144 (9th Cir. 2014)................................................. 10, 12

*United States v. Wilkes,* 662 F.3d 524 (9th Cir. 2011) ........................................................ 14

# TABLE OF AUTHORITES
## FEDERAL STATUTES

18 U.S.C. § 2 ................................................................................................................ 3

18 U.S.C. § 111 ............................................................................................................ 4

18 U.S.C. § 115 ............................................................................................................ 4

18 U.S.C. § 371 ............................................................................................................ 4

18 U.S.C. § 372 ......................................................................................................... 2, 4

18 U.S.C. § 641 ............................................................................................................ 3

18 U.S.C. § 924(c) .................................................................................................... 3, 4

18 U.S.C. § 930 ............................................................................................................ 3

18 U.S.C. § 1361 .......................................................................................................... 3

18 U.S.C. § 3161(h)(1)(D) ......................................................................................... 12

18 U.S.C. § 1503 .......................................................................................................... 4

18 U.S.C. § 1951 .......................................................................................................... 4

18 U.S.C. § 1952 .......................................................................................................... 4

28 U.S.C. § 2244(c)(5) ............................................................................................... 15

## INTRODUCTION

Defendants are five individuals charged along with 21 others with the unlawful takeover of the Malheur Wildlife Refuge in Eastern Oregon in January of 2016. Defendants are also separately charged (along with 14 others) with various crimes arising out of a conflict with federal officials in Bunkerville, Nevada, in April of 2014. Defendants were arrested in Oregon and arraigned on Oregon charges on January 27, 2016. Shortly thereafter, a grand jury in Nevada issued an indictment against defendants on February 17, 2016. In March, when the U.S. Attorney's Office in Nevada secured writs of habeas corpus *ad prosequendum* for five of the Oregon defendants to be transported to Nevada for arraignment, the district court in Oregon sought to honor those writs and denied defendant's objections. The judge took this action only after undertaking further investigation.

The judge conferred with the U.S. Marshal to confirm that defendants could be transported to Nevada and promptly returned to Oregon within approximately ten days. The judge also held a status hearing that included a Nevada magistrate judge, the Nevada prosecutors, and a defense attorney already appointed for one of the defendants in Nevada (Ryan Payne). Only after ensuring that Nevada prosecutors did not intend to disrupt the Oregon trial date, and confirming with the Nevada magistrate judge that defendants would be promptly returned to Oregon, did the judge agree to honor the transport request. The trial judge took pains to ensure that

1

this limited order would have little to no adverse effect on defendants or their trial counsel. Her order should be respected and this emergency appeal and petition for mandamus relief should be denied.

## STATEMENT OF JURISDICTION

The parties dispute whether this Court has jurisdiction to consider the district court's ruling under the collateral order doctrine. By contrast, this Court properly has jurisdiction over defendants' mandamus petition. *See, e.g.*, *Benvin v. U.S. District Court, District of Nevada*, 791 F.3d 1096 (9th Cir. 2015).

## STATEMENT OF ISSUES PRESENTED

1.   Is the district court's denial of a motion seeking to prohibit defendants' transportation from one federal district to another federal district a viable collateral order that this Court has jurisdiction to review?

2.   Alternatively, is extraordinary mandamus relief warranted?

## DEFENDANTS' CUSTODY STATUS

Defendants are currently in the custody of the U.S. Marshals Service.

## STATEMENT OF THE FACTS

The five defendants who filed this interlocutory appeal are charged in a six-count superseding indictment with conspiracy to impede officers and employees of the United States Fish and Wildlife Service and the Bureau of Land Management from discharging their duties at the Malheur National Wildlife Refuge in Harney County, Oregon, in violation of 18 U.S.C. § 372, unlawfully possessing firearms in federal

facilities in violation of 18 U.S.C. §§ 930(b) & 2, using and carrying firearms in relation to a crime of violence in violation of 18 U.S.C. § 924(c), theft of government property in violation of 18 U.S.C. § 641 (two counts), and depredation of government property in violation of 18 U.S.C. §§ 1361 & 2. (ER 90).[1]  The indictment alleges that defendants occupied the refuge office by force, brandished firearms, refused to leave, and they "threatened violence against anybody who attempted to remove them." (ER 92).

Defendants were arrested on the Oregon charges on January 26, 2016; they made their initial appearances on January 27, 2016.  The original indictment was docketed on February 3, 2016, and the superseding indictment was filed on March 8, 2016.

Three of these defendants—Ryan Bundy, Ammon Bundy, and Ryan Payne— were also charged in a 16-count indictment issued in the District of Nevada on February 17, 2016.  That indictment alleges that the group participated in an "armed assault against federal law enforcement officers" on April 12, 2014, in and around Bunkerville, Nevada. (ER 206).  According to that indictment, defendants forced federal officials to abandon their efforts to seize and remove 400 head of cattle from public lands.  The indictment charges defendants with conspiracy to commit an

---

[1]  "ECF No." refers to the docket entry in the court's record; "ER" refers to defendants' Excerpt of Record, and "Def. Br." refers to defendants' Opening Brief.

offense against the United States in violation of 18 U.S.C. § 371, conspiracy to impede federal officials in violation of 18 U.S.C. § 372, using and carrying firearms in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (four counts), assault on a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b) (two counts), threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B)(2 counts), obstruction of justice in violation of 18 U.S.C. § 1503 (three counts), interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 (two counts), and interstate travel in aid of extortion in violation of 18 U.S.C. § 1952.

A Nevada grand jury issued a superseding indictment on March 2, 2016, adding 14 defendants, including defendants Cavalier and Cooper. (ER 143). As of March 22, 2016, eleven of the Nevada defendants had been arraigned there. (ER 29) There are seven defendants who appear in both the Oregon and Nevada superseding indictments: Ammon Bundy, Joseph O'Shaughnessy, Ryan Payne, Ryan Bundy, Brian Cavalier, Peter Santilli, and Blaine Cooper.

On the same day the Nevada superseding indictment issued (March 2), a federal magistrate judge in Nevada executed writs of habeas corpus *ad prosequendum* to the U.S. Marshal "commanding" that defendants be brought to the U.S. District Court in Nevada on or about March 28, 2016. (ER 74-79). The writs were issued upon the *ex parte* application of the U.S. Attorney's Office in Nevada. (ER 3; 43-44).

4

Defendants immediately filed an "emergency" motion in the District of Oregon seeking an order prohibiting the U.S. Marshal from complying with the writs. (ECF No. 312). The district court in Oregon (Judge Anna J. Brown) entered an interim order blocking the writs. (ER 68). Judge Brown held a hearing on the emergency motions on March 22. (ER 8-67). The court invited several individuals from Nevada to participate: Magistrate Judge Peggy Leen, several Assistant U.S. Attorneys, and the defense attorney who had already been appointed to represent Ryan Payne on the Nevada charges.

During the hearing, Judge Brown told the parties that she had consulted with the U.S. Marshal and confirmed that defendants could be transported to Nevada and returned to Oregon within an approximately 10-day period. (ER 16-17). The court asked defendants if they would be willing to consider appearing for their arraignments in Nevada via video teleconference, and defendants refused to consent to that alternative procedure. (ER 19, 24).

Although no formal trial date has yet been set for the Oregon charges, Judge Brown made clear during the hearing that trial would take place in September of 2016 "or earlier." (ER 26).

An Assistant U.S. Attorney from Nevada confirmed that his office had no intention or desire to interfere with the Oregon court's trial plans. (ER 31, 34). He also assured the court and defense counsel that his office did not intend to try the

Nevada case simultaneously with Oregon. (ER 31). Instead, because his office had gathered and planned to deliver to the defense approximately 1.4 terabytes of discovery, he anticipated that the Nevada trial would commence much later than the Oregon case. (ER 30, 53). Ryan Payne's Nevada defense attorney told the court that she would be unable to effectively prepare for trial without Payne's presence in that district; she anticipated asking the Nevada court not to return Payne to Oregon. (ER 39-41).

Turning to Nevada Magistrate Judge Leen, Judge Brown confirmed that there was "no impediment" to returning the five defendants back to Oregon within ten days. (ER 37). Judge Leen checked her calendar and affirmed that she would be able to cover the defendants' first appearances promptly; Judge Leen also gave Judge Brown her "assurance" that defendants would be "returned to you in ten days." (ER 52).

At the hearing's conclusion, Judge Brown rejected defendants' arguments that the writs were unlawful. The judge also explained that her ruling was a narrow one: she was "allowing these writs to be executed on this single occasion for the purpose of first appearances and a return to Oregon within about ten days." (ER 62). Judge Brown explained that this limited interruption "would not interfere with this Court's proceedings here or defendant's rights in this forum." (*Id.*). She also noted that any

prejudice defendants might suffer in Nevada "must be addressed to the District Court in Nevada and not this court." (*Id.*).

Judge Brown vacated the interim order blocking the writs and entered a written order summarizing her findings and conclusions. (ER 1-7). The court anticipated that defendants would be transported to Nevada between April 13, 2016, and April 25, 2016. (ER 6).[2] This appeal and followed. In addition, defendants have filed emergency motions to stay in both this Court and the district court in Oregon. Argument on the district court motion to stay execution of the writs pending this Court's ruling on the appeal is scheduled for April 6, 2016.

## SUMMARY OF THE ARGUMENT

The ruling challenged on appeal is exceedingly narrow: the district court ordered the U.S. Marshal to transport five defendants to Nevada for their first appearances. Whether this order will affect defendant's speedy trial rights or their ability to adequately defend themselves against the charges remains to be seen. Any prejudice suffered may be assessed and decided following a final judgment. This improvidently filed interlocutory appeal fails to satisfy the narrow collateral order doctrine and it should be dismissed.

---

[2] Because of security concerns surrounding defendants' transportation, the U.S. Marshal does not publicly disclose precisely when defendants will actually be in transit; it could be earlier than Judge Brown anticipated.

Defendants' alternative bid for mandamus relief fails because they cannot demonstrate that Judge Brown's order constitutes a "clear and indisputable" usurpation of judicial power. She simply sought to accommodate Nevada's request while limiting defendants' absence from the District of Oregon to prevent any significant delay in bringing the Oregon charges to trial. The mandamus petition should be denied on the merits.

## ARGUMENT

Defendants address jurisdiction and standards governing mandamus petitions at the end of their brief; we address them first because they are dispositive. This court lacks jurisdiction to consider this appeal under the collateral order doctrine and the alternative petition for mandamus misses the mark by a wide margin.

### A.     Standard of Review

This Court determines whether it has interlocutory appellate jurisdiction de novo. *United States v. Romero-Ochoa*, 554 F.3d 833, 835 (9th Cir. 2009).

### B.     The Collateral Order Doctrine Does Not Apply.

This Court's jurisdiction "is typically limited to final decisions of the district court." *Romero-Ochoa*, 554 F.3d at 835. Both the Supreme Court and this Court have acknowledged that permitting "piecemeal, prejudgment appeal undermines efficient judicial administration and encroaches upon the prerogatives of district court judges who play a special role in managing ongoing litigation." *United States v. Guerrero*, 693

8

F.3d 990, 995 (9th Cir. 2012). Under the collateral order doctrine, however, a non-final order may be appealable, if three conditions are satisfied:

First, it "must conclusively determine the disputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; third, it must "be effectively unreviewable on appeal from a final judgment." *Romero-Ochoa*, 554 F.3d at 835-36 (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)). The three-part *Cohen* test must be "strictly applied," "particularly in criminal cases." *Id.* at 836. The primary concern with permitting interlocutory appeals is that it causes delay that "may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants' release on bail may commit other crimes." *Id.* All three requirements must be met before this Court has collateral order jurisdiction. *Id.*

This Court has recognized that most interlocutory orders involve discrete issues that cannot be addressed later (e.g., privileges) or issues "appealable only where it affects a right not to be tried." *United States v. Beltran Valdez*, 663 F.3d 1056, 1058 (9th Cir. 2011). Thus, for example, this Court has recognized narrow exceptions permitting interlocutory review in cases challenging bail rulings, double jeopardy claims, violations of the Speech and Debate Clause, involuntary commitment orders,

and violations of the attorney-client privilege. *United States v. Austin*, 416 F.3d 1016, 1022-23 (9th Cir. 2005).

By contrast, this Court has rejected attempted interlocutory appeals seeking review over Sixth Amendment impairment allegations similar to the argument raised in this case. A district court's denial of a defendant's motion for new counsel is not immediately appealable, in part, because it is "subject to reconsideration as the prosecution proceeds." *Beltran Valdez*, 663 F.3d at 1058. A single defendant's withdrawal from a joint defense agreement and the court's refusal to permit the other defendants to preview his planned communications with the government was also beyond the narrow scope of the collateral order doctrine. *Austin*, 416 F.3d at 1022-24. A district court's *sua sponte* decision to remove defense counsel over a defendant's objection also failed the test because whether the defendant was prejudiced by the court's actions remained to be seen. *United States v. Tillman*, 756 F.3d 1144, 1149 (9th Cir. 2014).

Defendants fail to cite and the government is unaware of any case recognizing interlocutory jurisdiction over a court's pretrial order permitting a defendant's transportation to another district temporarily. In fact, nothing we uncovered even comes close.

The government does not dispute that the district court's order satisfies the first *Cohen* factor: the court's decision to permit the U.S. Marshal to transport

10

defendants to Nevada conclusively determines a disputed question. From there, we part company with the defense.

Because Judge Brown's order emphatically limited defendants' transportation to Nevada to a single trip, for a fixed, strictly limited time period, it does not resolve an "important" issue separate from the merits. The court went to great lengths to ensure that defendants would be promptly returned to Oregon so as to not interfere with their ability to prepare for trial in Oregon. Moreover, the court offered to permit defendants to make their appearances in Nevada via video teleconference to obviate the need for transportation at all, and defendants rejected that alternative arrangement. Thus, while this issue is separate from the merits of the case, it is not weighty enough to merit relief.

Defendants suggest far greater hardships than the record supports. Their fear that they will be ping-ponged between Oregon and Nevada finds no support in this record and is inconsistent with the plain language of Judge Brown's order restricting this issue to the single trip for arraignments. Whether defendants will suffer any impairment in defending the Nevada charges is, as the district court correctly observed, a separate matter for the Nevada court.[3] The only appeal pending before

---

[3] To the extent defendants argue that their speedy trial rights will be necessarily be violated either by the court's transport order or by what they predict will be a series of inter-district transfers is not correct. This Court has recognized that delay attributable to the pendency of other simultaneous criminal proceedings in other

*(continued . . .)*

this Court at this time involves the Oregon charges, not the charges pending in Nevada.

Finally, even if defendants satisfied the first two *Cohen* factors, they have not satisfied the third: any prejudice resulting from their transportation to Nevada is reviewable on appeal following entry of judgment. As this Court recognized in *Austin*, defendants' claims "would be largely satisfied by an acquittal." *Austin*, 416 F.3d at 1024. A temporary transportation order is certainly not synonymous with a "right not to be tried." *Id.* And whether defendants have suffered any prejudice from the court's order "cannot be adequately reviewed until trial is complete." *Tillman*, 756 F.3d at 1149.

Judge Brown carefully considered all of the defendants' concerns and she issued an order that was narrowly tailored to respect Nevada's desire to arraign these defendants on their charges, then return them to Oregon for their prompt trial. The court's ruling, while collateral to the merits, is central to the court's ability to manage

---

*(. . . continued)*

courts is properly excludable under 18 U.S.C. § 3161(h)(1)(D). *United States v. Lopez-Espindola*, 632 F.2d 107, 110 (9th Cir. 1980) (excluding delay attributable to separate state charges); *United States v. Allsup,* 573 F.2d 1141, 1144 (9th Cir. 1978) (excluding delay attributable to prosecution on Oklahoma bank robbery charges); *see also United States v. Montoya,* 827 F.2d 143, 148 (7th Cir. 1987) (adopting this Court's speedy trial analysis).

this pending case. The order defendants challenge fails to meet the *Cohen* standards

and is fully reviewable on appeal (if necessary) following entry of judgment.

### C. The Extraordinary Mandamus Remedy Is Inappropriate in this Case.

The government agrees that this Court has jurisdiction to consider defendants'

mandamus petition. The district court's decision is reviewed for clear error; this

Court "must be firmly convinced that the district court has erred and that the

petitioner's right to the writ is clear and indisputable." *Austin*, 416 F.3d at 1024.

Moreover, the fact that the district court may later be reversed does not supply a

viable basis for mandamus relief. *United States v. Guerrero*, 693 F.3d 990, 1000 (9th Cir.

2012). Because defendants fail to show clear error, that their right to relief is clear or

indisputable, or that they cannot obtain meaningful review at the conclusion of this

case, their petition should be denied.

This Court has recognized that mandamus is "an extraordinary remedy" that is

only appropriate to confine or compel a district court to act within its lawful exercise

of jurisdiction. *Miller v. Gammie*, 335 F. 3d 889, 895 (9th Cir. 2003) (en banc). "Only

exceptional circumstances amounting to a judicial usurpation of power will justify the

invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. 90, 95 (1967).

A single, even erroneous application of the rules will not justify mandamus relief:

"this Court has never approved the use of a writ to review an interlocutory procedural

order in a criminal case which did not have the effect of a dismissal." *Id.* at 98, 104.

13

Finally, defendants bear the burden of demonstrating that their right to the writ is "clear and indisputable." *Romero-Ochoa*, 554 F.3d at 839.

Five factors guide this Court's consideration of mandamus relief: (1) whether the petitioner has another adequate means to obtain relief, such as by direct appeal; (2) whether the petitioner will be damaged or prejudiced in a way uncorrectable on direct appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an "oft repeated error," or manifests a "persistent disregard" of the rules; and (5) whether the district court's order raises "new and important problems" or issues of first impression. *Id.* (citing *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). No single factor is dispositive; this Court's analysis may require balancing conflicting factors. *Id.*

None of those factors is presented in this petition.

First, defendants may raise this issue on direct appeal if and when they are convicted. *See, e.g.*, *United States v. Rice*, 776 F.3d 1021, 1026 (9th Cir. 2015) (reviewing post-judgment Sixth Amendment delay claims regarding *Faretta* advice and alleged Speedy Trial Act violations). Like requests for substitute counsel, this Court may later review the record to determine if defendants were prejudiced in defending the Oregon charges by virtue of their temporally limited transportation order. Any prejudice is correctable on appeal after entry of judgment. *See, e.g.*, *United States v. Wilkes*, 662 F.3d

14

524, 543 (9th Cir. 2011) (noting that a defendant who claimed a court failed to afford him sufficient time to prepare for trial had to show actual prejudice).

Next, the district court's order is not clearly erroneous. The statute governing the writ of habeas corpus *ad prosequendum* and transportation for appearance in a federal district court for trial, 28 U.S.C. § 2241(c)(5), permits transportation of in-custody defendants to federal district court proceedings. Nothing in the statute or case law restricts the timing of such writs and nothing expressly limits the writs' reach to federal-state transfers. In fact, this Court has recognized that the writ's use in the context of transporting a convicted federal inmate to another federal jurisdiction to face trial on new charges. *See, e.g.*, *United States v. Stoner*, 799 F.2d 1253, 1254-55 (9th Cir. 1986). The district court asked for a looked for any contrary authority; defendants failed to come forward with anything and, consequently, there is no clear error.

Defendants' arguments challenging the Nevada magistrate judge's authority to issue the writs at all (Def. Br. 15-20) is beyond the scope of this appeal. Even if their argument was accurate, the question presented in this case is whether the Oregon trial judge had the authority to direct the U.S. Marshal to transport defendants to Nevada for a single court appearance. Because there is no authority to the contrary, there is no clear error justifying mandamus relief.

15

Defendants argue strenuously that the transportation contemplated in this case is unique and unprecedented. That assertion cuts against the "oft-repeated error" factor.

Finally, although the district court's order raises a new problem, it is not an "important" problem that would justify this Court's extraordinary intervention. Judge Brown's ruling was narrow; it was carefully crafted after a thorough examination of all of the attendant circumstances. An approximate 10-day delay to permit defendants to be transported to Nevada in no way implicates the type of significant interest sought to be redressed through mandamus.

## CONCLUSION

This Court should dismiss the appeal insofar as defendants seek to rely on the collateral order doctrine; the alternative petition for a writ of mandamus should be denied on the merits.

Dated this 4th day of April 2016.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/Kelly A. Zusman*
KELLY A. ZUSMAN
ETHAN D. KNIGHT
GEOFFREY A. BARROW
CRAIG J. GABRIEL
Assistant United States Attorneys

16

## STATEMENT OF RELATED CASES

Pursuant to 9th Cir. R. 28-2.6, the United States represents that it knows of no cases related to this appeal.

## CERTIFICATE OF COMPLIANCE
### Circuit Rule 32(a)(7)(C)

Pursuant to Ninth Circuit Rule 32(a)(7)(C), I certify that the government's brief is:

Proportionately spaced, has a typeface of 14 points in Garamond font, and contains 3653 words according to Word 2010.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/Kelly A. Zusman*
KELLY A. ZUSMAN

18