No. 16-30080
_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                                                Plaintiff-Appellee,

   v.

AMMON BUNDY,
RYAN PAYNE,
RYAN BUNDY,
BRIAN CAVALIER,
and BLAINE COOPER,

                                                Defendants-Appellants.
_____

**Interlocutory Appeal & Petition for Writ of Mandamus
from the United States District Court for the District of Oregon
Portland Division**
_____

**REPLY BRIEF OF DEFENDANTS-APPELLANTS**
_____

Lisa Hay
Federal Public Defender
Rich Federico
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone
(503) 326-5524 Facsimile
Attorneys for Defendant Ryan Payne

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................1

    I.     The Collateral Order Doctrine Applies to the Important Issue Raised in Defendants' Appeal. ............................................................1

          A.     Defendants' Appeal is an Important Issue That is Completely Separate from the Merits of their Criminal Case. ....................................................................................3

          B.     The Deprivation of Defendants' Constitutional Rights is Unreviewable on Appeal from a Final Judgment. ......................5

    II.    Mandamus Remedy Is an Appropriate Alternative Remedy to Protect Defendants' Rights. .................................................................9

          A.     The District Court's Transport Order is Clearly Erroneous as a Matter of Law. ......................................................................10

          B.     The Remaining Mandamus Factors Weigh in Favor of Defendants. ..............................................................................13

CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Abney v. United States*,
    431 U.S. 651 (1977) ..................................................................................6

*Arizona v. Fulminante*,
    499 U.S. 279 (1991) ..................................................................................6

*Clark v. Martinez*,
    543 U.S. 371 (2005) ................................................................................11

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) ................................................................... 2, 3, 5, 13

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981) ..................................................................................3

*Flanagan v. United States*,
    465 U.S. 259 (1984) ..................................................................................6

*Luis v. United States*,
    No. 14-419, slip op. at 4, 2016 WL1228690, at *5 (U.S. Mar. 30, 2016) .............5

*Ponzi v. Fessenden*,
    258 U.S. 254 (1922) ..................................................................................5

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006) ..................................................................................6

*United States v. Harper*,
    729 F.2d 1216 (9th Cir. 1984) ................................................................10

*United States v. Price*,
    566 F.3d 900 (9th Cir. 2009) ....................................................................7

*United States v. Romero-Ochoa*,
    554 F.3d 833 (9th Cir. 2009) ...................................................... 2, 9, 10, 13

*United States v. Stoner*,
    799 F.2d 1253 (9th Cir. 1986) ................................................................12

*United States v. Woods,*
 621 F.2d 844 (6th Cir.), *cert. denied*, 449 U.S. 877 (1980)) ..............................13

*Will v. United States,*
 389 U.S. 90 (1967) ....................................................................................9

### STATUTORY AUTHORITIES

28 U.S.C. § 2241 ........................................................................................11

Interstate Agreement on Detainers Act (IADA), Pub. L. No. 91-538 (1970)
 (reprinted in 18 U.S.C. app. at 545 (1982)..........................................12

### STATUTORY AUTHORITIES

Fed. R. Crim. P. 5 ....................................................................................4, 8

**INTRODUCTION**

In this appeal, the defendants seek to prevent a forcible transport to Nevada that will violate their constitutional rights and interfere with the progression of their case in the District of Oregon. Subsequent to the filing of the appeal, the Oregon District Court ordered trial to begin for all 26 co-defendants in the Oregon case on September 7, 2016.

In its Answering Brief, the government argues that jurisdiction and standards for mandamus relief are dispositive in the government's favor. The government relies heavily upon the argument that the transport order was a "narrow" ruling that obviates any claims of prejudice. Such reliance misstates the claims raised by the defendants. A showing of prejudice is not required because the harm is structural error. The government makes the same mistake in the district court's ruling, and defendants seek review by this Court.

**ARGUMENT**

**I. The Collateral Order Doctrine Applies to the Important Issue Raised in Defendants' Appeal.**

The government correctly points out that the primary concern with permitting interlocutory appeals is that it causes delay that "may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants' release

1

on bail may commit other crimes." *United States v. Romero-Ochoa*, 554 F.3d 833, 836 (9th Cir. 2009); Gov't Answering Brief (Answer), Ct. App. Dkt. 10-1, at 9. However, the government fails to recognize that all of those considerations support the defendants' position in this appeal.

The defendants demanded a speedy trial in Oregon. They are trying to avoid delay and interference with their trial preparation and protect their ability to receive effective assistance of counsel in Oregon. It is the singular entity of the United States Department of Justice, operating through its Oregon and Nevada offices, that is seeking the interruption of the case brought in Oregon, and the prosecution cannot plausibly claim any prejudice to their respective cases by the defendants' proposed order of proceedings. All five defendants are currently in pretrial custody. The costs to the public of transporting the defendants back and forth between two districts—approximately 1,000 miles apart—to defend themselves in two complex cases, with different lawyers, against charges alleging wholly unrelated events will be substantial. This is exactly what the defendants seek to prevent.

The parties agree that the *Cohen* test is applicable to determine whether the collateral order doctrine exception provides the Court jurisdiction to resolve the defendants' interlocutory appeal. *See generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949); Answer at 9. The government concedes that the first

factor (that the order appealed conclusively determine a disputed question) has been satisfied. *See Cohen*, 337 U.S. at 546; Answer at 13. This leaves the second and third factors of the *Cohen* test for the Court's determination.

### A. Defendants' Appeal is an Important Issue That is Completely Separate from the Merits of Their Criminal Case.

The second *Cohen* factor requires that an order "resolve an important issue completely separate from the merits of the action" to be appealable. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374–75 (1981). The government conceded that the issue raised by defendants "is separate from the merits of the case," but contends that it is not "important" or "weighty enough to merit relief." *See* Answer at 11.

The importance of the issue defendants have raised on interlocutory appeal is underscored by the fact that neither party has been able to find a single case, in any Circuit or District, in which the federal government has attempted to shuttle multiple defendants between two districts for simultaneous prosecutions in complex cases, over the objection of the defendants, who have demanded speedy trial and are working rigorously with their counsel to prepare for trial. *See* Answer at 10. Additionally, although the district court ordered the transport to occur, this Court

3

need not guess whether the district court viewed this issue as an "important" one. The district court stated:

> The parties have raised *important* questions that are fundamental to court power and to the *unusual* situation here where two very complicated cases have been initiated by the United States in two different districts involving so many of the same defendants who have been detained while these proceedings go forward.

CR 340 at 54:1–6; ER at 61 (emphasis added). During oral argument on the defendants' motion to stay, the district court specifically requested this Court to intervene and resolve the issue on the merits:

> I believe I do need the confirmation by the Ninth Circuit Court of Appeals that this order should stand. And if I'm wrong on these analyses, then it's important that that decision get made by a higher court now for the future progress of this case and the one in Nevada. If —if the Ninth Circuit Court of Appeals believes the defendant should not be transported, they know now of the urgency of the matter. . . . So I look forward to the Ninth Circuit providing all of us with controlling direction on this problem.

SER at 26, 27.

The government attempts to portray the defendants as recalcitrant and obstructionist in their failure to consent to appearing in Nevada by videoconference. *See* Answer at 11. While both Fed. R. Crim. P. 5(f) and 10(c) allow the defendants to consent to initial appearances and arraignments by videoconference, that consent falls squarely within the realm of the defendants' discretion. This is for good reason; the defendants have a right to attend such important court proceedings in person, and

4

to meet and confer with their counsel in person, to solidify "the necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust." *Luis v. United States*, No. 14-419, slip op. at 4, 2016 WL1228690, at *5 (U.S. Mar. 30, 2016) (plurality).

### B. The Deprivation of Defendants' Constitutional Rights is Unreviewable on Appeal from a Final Judgment.

The government has consistently taken the position that defendants' claim "far greater hardships than the record supports." Answer at 11. Likewise, the district court found defendants' arguments pertaining to speedy trial, due process, and effective assistance of counsel to be "premature." CR 334, at 3–4; ER at 3–4. Now, the government argues the third *Cohen* factor is not met because "any prejudice resulting from their transportation to Nevada is reviewable on appeal following entry of judgment." Answer at 12.

The government's argument fails to appreciate the impossible situation in which defendants will find themselves. By virtue of time and geography, they will not be able to claim and vindicate their constitutional rights in both districts. *See Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922) ("One accused of crime, of course, cannot be in two places at the same time."). Once transported to Nevada the defendants will be forced to choose the district in which they can fully vindicate their rights. Which lawyer—in Oregon or Nevada—should they meet and work with to

5

receive effective representation? Which set of discovery—Oregon or Nevada—should they spend time reviewing to be on notice of the government's evidence? In which trial—Oregon or Nevada—should they demand speedy trial? These unprecedented dilemmas will not exist if the government is ordered to adhere to the standard order of priority of cases. Just as double jeopardy claims have been addressed pretrial by way of the collateral order doctrine exception, *see Abney v. United States*, 431 U.S. 651, 659–60 (1977), so too should this Court allow the defendants' claims to be heard by interlocutory appeal, *see, e.g., Flanagan v. United States*, 465 U.S. 259, 266 (1984) ("Refusals to dismiss an indictment for violation of the Double Jeopardy Clause or of the Speech or Debate Clause, like denials of bail reduction, are truly final and collateral, and the asserted rights in all three cases would be irretrievably lost if review were postponed until trial is completed.").

Further, defendants' claims of error by the district court are of structural error that "defy analysis by 'harmless-error' standards because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49 (2006) (holding that the deprivation of the right to counsel of choice is structural error) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991)). This is particularly true regarding the Sixth Amendment right to effective assistance of counsel. Once

the deprivation occurs, as it will when the defendants are taken in custody to a different district to defend themselves in a different case, a "[h]armless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." *Id*. at 150.

The defendants are indeed trying to prevent future infringement of their rights from occurring, so the issue is inherently forward-looking, but the standards for reviewing constitutional rights are different pre-trial and post-trial. The law does not require the defendants to wait for the structural error and harm to occur before they can seek relief. For example, prior to trial there is no requirement that the defense establish that *Brady* evidence is "material." *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) ("[T]he 'materiality' standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials . . . [J]ust because a prosecutor's failure to disclose evidence does not violate a defendant's due process rights does not mean that the failure to disclose is proper." (citations omitted)). Just as the government is obliged to provide evidence favorable to the defendants without a showing of materiality, interference with the attorney-client relationship implicates Sixth Amendment rights without a showing of prejudice. And, in this case, the inevitable prejudice from the forcible separation and isolation from counsel should be prevented. This is particularly true when the harm to befall

7

defendants has a set date—their forcible removal from the district where their case is currently in progress.

Although defendants need not show prejudice, they are able to do so. As noted in the defendants' Opening Brief, there are two other defendants—Joseph O'Shaughnessy and Peter Santilli—who are similarly situated in that they have been indicted in both the Districts of Oregon and Nevada in the same cases as defendants. *See* Opening Brief, Ct. App. Dkt. 5, at 2 n.2. Unlike defendants, however, Mr. O'Shaughnessy and Mr. Santilli, were both released from custody in Oregon, only to be transported in custody to Nevada.[1] The transport and incarceration in Nevada has made it virtually impossible for their lawyers in Oregon to remain in contact with them. For example, Mr. Santilli was transported from Oregon to Nevada on March 29, 2016. Upon arrival in Nevada he was held in segregation for 23 hours a

---

[1] Subsequent to his release on conditions in Oregon, Mr. O'Shaughnessy was taken into custody in Arizona, where he resides, based upon the Nevada warrant. He was then transported to Nevada from the District of Arizona pursuant to Fed R. Crim. P. 5(c). During the time he was in custody in Arizona, in transport, and upon arrival to Nevada, Mr. O'Shaughnessy's defense counsel in Oregon was unable to contact him for approximately one month. The inability for counsel to communicate with Mr. O'Shaughnessy was discussed during the hearing before the District Court in Oregon on March 22, 2016, *see* CR 340, at 43–45; ER 50–52, and was again one of the subjects of discussion at the Status Hearing held on April 6, 2016, *see* SER 20.

day due to normal intake processing at the Nevada facility.[2] SER at 17, 18. Mr. Santilli's communications with his Oregon lawyer are "not good" because his Oregon lawyer cannot make any calls to him. SER at 21. Mr. Santilli was not permitted to take any discovery materials from his Oregon case during the transport to Nevada. SER at 22.

The purpose of the collateral order doctrine exception is to address the important issues that cannot properly wait for review on direct appeal. Defendants' claims fit within the exceptions and this Court should review the claims on their merits.

## II.     Mandamus Remedy Is an Appropriate Alternative Remedy to Protect Defendants' Rights.

Defendants agree with the government that mandamus relief is an "extraordinary remedy" and that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify [its] invocation." *Romero-Ochoa*, 554 F.3d at 838 (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)). Defendants' appeal, however, presents "exceptional circumstances" that warrant mandamus relief.

---

[2] Mr. Santilli is being held at the Anderson County Detention Center. SER at 20, 21.

In reviewing a mandamus petition, the district court's order is reviewed for clear error. *See id.* at 839. The five guiding principles, [3] cited by both parties, "are not meant to supplant reasoned and independent analysis by appellate courts," and no single factor is dispositive. *See id.* (quoting *United States v. Harper*, 729 F.2d 1216, 1222 (9th Cir. 1984)).

### A. The District Court's Transport Order is Clearly Erroneous as a Matter of Law.

With respect to the third principle, the district court's order is clearly erroneous. As discussed *supra*, the district court erred in requiring defendants to show prejudice before meriting relief rather than properly recognizing the defendants' claims to be structural error. Defendants raised structural error and argued it to the district court, to no avail.[4] The district court and the government both

---

[3] The five principles are as follows: "(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. . . . (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression." *See Romero-Ochoa*, 554 F.3d at 839.

[4] During the April 4, 2016 hearing before the district court on the stay, defense counsel stated, "[W]e have argued and would continue to argue that the defendants need not show prejudice at this point because it's a structural issue." SER at 13.

10

focused on the "narrow" order to transport defendants without an appreciation of the harm to defendants' constitutional rights. *See* SER 24–25; Answer at 16.

The government also argues the district court correctly interpreted the statute, 28 U.S.C. § 2241(c)(5), to permit the federal government to shuttle pretrial defendants between two districts for simultaneous prosecutions through execution of the writ of habeas corpus ad prosequendum. *See* Answer at 15. The government notes that "defendants failed to come forward with anything" in response to the district court's request for contrary authority. *Id*. The government's position appears to be that, absent any authority to the contrary, its interpretation of the statute is correct.

The district court committed clear error by adopting a statutory construction that raised a multitude of constitutional problems. *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail . . . ."). The fact that neither party located *contrary authority* to the district court's interpretation of the statute must also be weighed against the fact that neither party was able to find *controlling authority* that would permit the district court's interpretation under the same or similar circumstances. In the absence of

11

contrary or controlling authority, the district court should have chosen an interpretation of the statute that rested upon the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts. *See id*. at 381–82.

The government cited *United States v. Stoner*, 799 F.2d 1253 (9th Cir. 1986), as its sole authority to demonstrate that this Court has recognized the writ's use in the context of transporting an inmate between federal districts. *See* Answer at 15. However, a closer look at *Stoner* highlights the limitations of its authority to govern the unique circumstances of the defendants' appeal.

In *Stoner*, the defendant was transported by writ of habeas corpus ad prosequendum from a federal correctional facility *following* his federal conviction in the District of Columbia so that he could be tried on a separate case in the Northern District of California. Additionally, the defendant in *Stoner* had a detainer lodged against him while at the correctional facility and he "*formally demanded trial* on the outstanding charge." *Id*. at 1255 (emphasis added). The defendant then sought dismissal arguing the government violated the Interstate Agreement on Detainers Act (IADA), Pub. L. No. 91-538 (1970) (reprinted in 18 U.S.C. app. at 545 (1982)), a statute not at issue in this appeal. Unlike defendants, Mr. Stoner did not have to face simultaneous prosecutions in separate federal districts, as the prosecution in his

12

cases followed the normal priority of detainers and trial process. Further, although Mr. Stoner was transferred pursuant to a writ, it was only after a detainer was lodged and his claims were raised on appeal pursuant to IADA. *Id.* at 1254. In interpreting IADA, this Court acknowledged the absurdity present in the defendants' appeal— Congress never intended IADA to be a statute in which courts are forced to serve as referees between competing district offices of the United States Department of Justice. *See id*. at 1256 ("[T]hat the IADA is not implicated by prisoner transfers within the federal system simply stat[es] the obvious, which is that entering into the [IAD], the United States has not agreed with itself.") (quoting *United States v. Woods*, 621 F.2d 844, 845 n.1 (6th Cir.), *cert. denied*, 449 U.S. 877 (1980)).

### B. The Remaining Mandamus Factors Weigh in Favor of Defendants.

The government argues "defendants may raise this issue on direct appeal if and when they are convicted." Answer at 14. This factor is similar to the third *Cohen* factor regarding the collateral order doctrine, which defendants addressed *supra*. Likewise, the fourth and fifth factors both weigh heavily in defendants' favor, for reasons previously discussed. This is not an "oft-repeated error" because it raises a "new and important" issue of first impression. *See Romero-Ochoa*, 554 F.3d at 839. Thus, once the Court finds the district court's order to be clearly erroneous, the remaining factors tip the balance in favor of granting mandamus relief.

## CONCLUSION

This Court has jurisdiction under both the collateral order doctrine and the All Writs Act to resolve the merits of defendants' appeal. The appeal raises important, unprecedented issues that necessitate this Court intervening to provide controlling direction. To prevent the irreparable harm that will result from if defendants are forcibly transported to Nevada, the Court should enforce the due-processed based priority of prosecutorial jurisdiction.

Dated this 8th day of April, 2016.

>  */s/ Rich Federico*
> Rich Federico
> Attorney for Defendant-Appellant
> Ryan Payne

9th Circuit Case Number(s): 16-30080

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*********************************************************************************

## CERTIFICATE OF SERVICE
When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format): _____

*********************************************************************************

## CERTIFICATE OF SERVICE
When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Apr 8, 2016.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

C. Michael Arnold, Arnold Law, 401 E 10th Ave., Ste. 400, Eugene, OR 97401 (A. Bundy)
Todd E. Bofferding, 1215 B Street, P.O. Box 539, Hood River, OR 97031 (Cavalier)
Krista Shipsey, 820 SW 2nd Avenue, Suite 275, Portland, OR 97204 (Cooper)

Signature (use "s/" format): s/ Rich Federico