No. 16-30080

_____

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

AMMON BUNDY,
RYAN PAYNE,
RYAN BUNDY,
BRIAN CAVALIER,
and BLAINE COOPER,

Defendants-Appellants.

_____

SUPPLEMENTAL

EXCERPT OF RECORD

_____

Lisa Hay
Federal Public Defender
Rich Federico
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204
(503) 326-2123  Telephone
(503) 326-5524  Facsimile
Attorneys for Defendant Ryan Payne

## TABLE OF CONTENTS

**Page**

Excerpt Transcript of Proceedings held April 6, 2016 ............................................ 1

1      IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF OREGON

3  UNITED STATES OF AMERICA,           )
                                       )  Case No. 3:16-CR-0051-BR
4            Plaintiff,                )
                                       )
5  v.                                  )  April 6, 2016
                                       )
6  AMMON BUNDY (1),                    )
   JON RITZHEIMER (2),                 )
7  JOSEPH O'SHAUGHNESSY (3),           )
   RYAN PAYNE (4),                     )
8  RYAN BUNDY (5),                     )
   BRIAN CAVALIER (6),                 )
9  SHAWNA COX (7),                     )
   PETER SANTILLI (8),                 )
10 JASON PATRICK (9),                  )
   DUANE LEO EHMER (10),               )
11 DYLAN ANDERSON (11),                )
   SEAN ANDERSON (12),                 )
12 DAVID LEE FRY (13),                 )
   JEFF WAYNE BANTA (14),              )
13 SANDRA LYNN ANDERSON (15),          )
   KENNETH MEDENBACH (16),             )
14 BLAINE COOPER (17),                 )
   WESLEY KJAR (18),                   )
15 COREY LEQUIEU (19),                 )
   NEIL WAMPLER (20),                  )
16 JASON CHARLES BLOMGREN (21),        )
   DARRYL WILLIAM THORN (22),          )
17 GEOFFREY STANEK (23),               )
   ERIC LEE FLORES (25),               )
18 JAKE RYAN (26),                     )
                                       )
19          Defendants.                )
   ====================================)  Portland, Oregon

20

21        EXCERPT TRANSCRIPT OF PROCEEDINGS

22          (Excerpt of Oral Argument)

23   BEFORE THE HONORABLE ANNA J. BROWN, DISTRICT JUDGE

24

25

2

| | | |
|---|---|---|
| 1 | COURT REPORTER: | AMANDA M. LeGORE |
| | | CSR, RDR, FCRR, CRR, CE |
| 2 | | U.S. Courthouse |
| | | 1000 SW Third Avenue Suite 301 |
| 3 | | Portland, OR  97204 |
| | | (503)326-8184 |
| 4 | | |
| 5 | APPEARANCES: | |
| | FOR THE PLAINTIFF: | CRAIG GABRIEL |
| 6 | | GEOFFREY BARROW |
| | | ETHAN KNIGHT |
| 7 | | Assistant U.S. Attorneys |
| | | U.S. Attorney's Office |
| 8 | | 1000 SW Third Avenue |
| | | Portland, OR  97204 |
| 9 | | (503)727-1000 |
| 10 | FOR DEFENDANT AMMON | |
| | BUNDY: | LISSA CASEY |
| 11 | | MICHAEL ARNOLD |
| | | Arnold Law Office, LLC |
| 12 | | 401 E 10th Avenue, Suite 400 |
| | | Eugene, OR  97401 |
| 13 | | (541)338-9111 |
| 14 | | |
| | FOR DEFENDANT | |
| 15 | RITZHEIMER: | TERRI WOOD |
| | | 730 Van Buren Street |
| 16 | | Eugene, OR 97402 |
| | | (541)484-4171 |
| 17 | | |
| | FOR DEFENDANT JOSEPH | |
| 18 | O'SHAUGHNESSY: | AMY BAGGIO |
| | (defendant not present) | 621 SW Morrison, Suite 1025 |
| 19 | | Portland, OR  97205 |
| | | (503)222-9830 |
| 20 | | |
| 21 | FOR DEFENDANT RYAN | |
| | PAYNE: | RICHARD FEDERICO |
| 22 | | Assistant Federal Defender |
| | | 101 SW Main Street, Suite 1700 |
| 23 | | Portland, OR  97204 |
| | | (503)326-2123 |
| 24 | | |
| 25 | FOR DEFENDANT RYAN | |
| | BUNDY: | RYAN BUNDY |

SUPPLEMENTAL EXCERPTS OF RECORD  2

```
 1                              Pro se
                                79400-065
 2
                                LISA LUDWIG
 3                              Standby Counsel
                                811 SW Naito Parkway, Suite 500
 4                              Portland, OR  97204
                                (503)223-5570
 5

 6    FOR DEFENDANT BRIAN
      CAVALIER:               TODD BOFFERDING
 7                              1215 B Street
                                PO Box 539
 8                              Hood River, OR 97031
                                (541)490-9012
 9

10    FOR DEFENDANT COX:      TIFFANY HARRIS
      (defendant present       121 SW Salmon Street, Suite 1420
11    telephonically)         Portland, OR  97204
                                (503)546-2927
12

13    FOR DEFENDANT PETER
      SANTILLI:               THOMAS COAN
14    (defendant not present) 1000 SW Fifth Avenue, Suite 1400
                                Portland, OR  97204
15                              (503)221-8736

16
      FOR DEFENDANT PATRICK:  ANDREW KOHLMETZ
17                              Raivio, Kohlmetz & Steen, PC
                                741 SW Lincoln Street
18                              Portland, OR  97201
                                (503)224-1104
19
      FOR DEFENDANT EHMER:    DAVID AUDET
20                              249 NE Lincoln
                                Hillsboro, OR  97124
21                              (503)648-3020

22    FOR DEFENDANT DYLAN
      ANDERSON:               SAMUEL KAUFFMAN
23                              Kauffman Killberg, LLC
                                1001 SW 5th Avenue, Suite 1414
24                              Portland, OR  97204
                                (503)224-2595
25
```

4

```
 1   APPEARANCES:  (continuing)
     FOR DEFENDANT SEAN
 2   ANDERSON:                MATTHEW McHENRY
                              Levine & McHenry, LLC
 3                            1001 SW Fifth Avenue, Suite 1414
                              Portland, OR  97204
 4                            (503)546-3927

 5   FOR DEFENDANT FRY:       CELIA HOWES
                              Hoevet Olson Howes, PC
 6                            1000 SW Broadway, Suite 1500
                              Portland, OR  97205
 7                            (503)228-0497

 8   FOR DEFENDANT BANTA:     ROBERT SALISBURY
     (defendant not present)  330 South 1st Street
 9                            PO Box 1272
                              St. Helens, OR  97051
10                            (503)397-9000

11   FOR DEFENDANT SANDRA
     ANDERSON:                TYL BAKKER
12   (defendant not present)  621 SW Alder Street, Suite 621
                              Portland, OR  97205
13                            (503)721-0140

14   FOR DEFENDANT
     MEDENBACH:               KENNETH MEDENBACH
15                            Pro Se
                              25795-086
16
                              MATTHEW SCHINDLER
17                            501 4th Street #324
                              Lake Oswego, OR  97034
18                            (503)699-7333

19   FOR DEFENDANT BLAINE
     COOPER:                  KRISTA SHIPSEY
20                            820 SW 2nd Avenue, Suite 275
                              Portland, OR  97204
21                            (503)309-9024

22   FOR DEFENDANT KJAR:      JAMES HALLEY
     (defendant not present)  735 SW First Avenue, 2nd Floor
23                            Portland, OR  97204
                              (503)295-0301
24

25
```

SUPPLEMENTAL EXCERPTS OF RECORD  4

5

```
 1    APPEARANCES:  (continuing)
      FOR DEFENDANT LEQUIEU:    RAMON PAGAN
 2                              121 SW Salmon Street, 11th Floor
                                PMB #1195
 3                              Portland, OR  97204
                                (971)270-0421
 4
      FOR DEFENDANT WAMPLER:    LISA MAXFIELD
 5    (defendant not present)  Pacific Northwest Law, LLP
                                1420 World Trade Center
 6                              121 SW Salmon
                                Portland, OR  97204
 7                              (503)222-2661

 8    FOR DEFENDANT BLOMGREN:   ROBERT RAINWATER
      (defendant not present)  Rainwater Law Group
 9                              1327 SE Tacoma, Suite 239
                                Portland, OR  97202
10                              (971)271-7566

11    FOR DEFENDANT THORN:      LAURIE SHERTZ
                                121 SW Salmon Street, 11th Floor
12                              Portland, OR  97204
                                (503)406-2136
13
      FOR DEFENDANT STANEK:     BEN ANDERSEN
14    (defendant not present)  101 SW Madison Street, #9068
                                Portland, OR  97207
15                              (503)860-2531

16
      FOR DEFENDANT FLORES:     ERNEST WARREN, JR.
17    (defendant not present)  Warren & Sugarman
                                838 SW First Avenue, Suite 500
18                              Portland, OR  97204
                                (503)228-6655
19
      FOR DEFENDANT JAKE
20    RYAN:                     JESSE MERRITHEW
      (defendant not present)  Levi Merrithew Horst, LLP
21                              610 SW Alder Street, Suite 415
                                Portland, OR  97205
22                              (971)229-1241

23

24

25
```

1        (The following excerpted proceedings were held on

2     Wednesday, April 6, 2016; 10:52 a.m.)

3        THE COURT:  All right.  Thank you very much.

4        All right.  Let's move to the motion that is docket

5   No. 357, for a stay of the order I entered, authorizing the

6   marshal to honor the habeas corpus writs ad prosequendum for

7   some certain of the defendants.

8        I wanted first to ask whether -- and I understand,

9   Mr. Federico, you're basically the lead on behalf of defendants

10  for this issue.

11       MR. FEDERICO:  Yes, your Honor.

12       THE COURT:  I'm wondering whether -- you or

13  Mr. Knight -- you have had any direction from the Ninth Circuit

14  as to timing or its consideration of the interlocutory appeal.

15       MR. FEDERICO:  Your Honor, I'll speak first to that.

16       As part of the circuit rule, you have to alert that a

17  the motion is coming, emergency consideration.  That has been

18  done.  We've been in communication with all of the filings.  We

19  have not yet heard back, though, from the circuit as to whether

20  or not, one, they're going to grant a request for emergency

21  consideration; two, any subsequent briefing schedule or when

22  they would seek to resolve the issue.

23       THE COURT:  And you've made clear to the circuit that

24  under the existing order, the marshal is authorized to start

25  transporting as of April 13?

7

1        MR. FEDERICO:  Yes, your Honor.

2        THE COURT:  All right.  Have you heard anything else?

3        MR. KNIGHT:  Nothing different, your Honor, no.

4        THE COURT:  All right.  Mr. Knight, Mr. Federico

5   argues the district court lost jurisdiction to even consider --

6        No, you're the one arguing that.

7        Let's go back.  Sorry.

8        MR. FEDERICO:  Yes, your Honor.

9        THE COURT:  You're arguing -- the Government was

10  arguing that the district court did not have jurisdiction to

11  stay its order because with the interlocutory appeal, it was

12  the Government's position that substantively that matter has

13  now been divested.

14       You're relying on the Federal Rule of Appellate

15  Procedure 8 and its explicit contemplation that the district

16  court would consider the rule.  Right?

17       MR. FEDERICO:  Yes, your Honor.  That is certainly

18  the starting point.

19       Also, I note I had a reply that was drafted that --

20  and then I saw the Court's e-mail the replies will not

21  typically be permitted.  I only state that because I am

22  obviously prepared to orally state some case law and talk about

23  the Government's --

24       THE COURT:  Let's start about jurisdiction first.  Go

25  with that point.  Then I would like to hear from Mr. Knight on

8

1  the jurisdiction issues.  And then we will go to the merits, if

2  I'm persuaded I have the authority to consider this motion.

3          MR. FEDERICO:  Yes, your Honor.

4          Regarding jurisdiction, the Court is correct.

5  Primarily, relying first on Federal Rule of Appellate Procedure

6  8(a), saying the district court in fact has priority over

7  jurisdiction.  And I believe the Government's response somewhat

8  mischaracterized what the defense had filed; both in the Ninth

9  Circuit.

10         They said that we -- once we filed the notice of

11 appeal, the district court had been divested of jurisdiction

12 because we also sought a stay directly with the Ninth.

13         What we did with the Ninth was filed for a request

14 for emergency consideration and then stated, also, that we were

15 simultaneously filing for a motion to stay with the district

16 court.  Those were filed on the same day.

17         And then said to the Ninth Circuit that if the

18 circuit court determines that it requires additional time to

19 resolve the matter and the stay hasn't been issued, then we

20 would request the Ninth Circuit to stay the district court

21 order.

22         In other words, the conditions are that if the

23 district court has not stayed it, the Ninth Circuit has said

24 they need more time to resolve, then we would ask the Ninth

25 Circuit to consider a stay.

9

1    Which is different than what -- the Government's

2  response in saying that we had just gone to the Ninth and

3  sought a stay directly.

4    So we believe under the -- the rule of appellate

5  procedure, the district court has, in fact, then priority

6  jurisdiction.

7    And I think also, your Honor, the cases cited by the

8  Government don't stand for the proposition that really what

9  we're asking the Court here is a procedural matter and not a

10  substantive matter.  Because the case law they provided -- for

11  example, the **Griggs versus Provident Consumer** case from 1982.

12  And they said that the Court is now divested of jurisdiction

13  over, quote, the matter as being appealed.  Well, the matter

14  being appealed is the transport order.  We haven't asked the

15  Court for reconsideration of that order.

16    And -- and, likewise, other case law -- for example,

17  there's a case **In Re Thorp**, from the Ninth Circuit, from

18  1981 -- the citation for that, your Honor, is 655 Federal 2d

19  997.  It says that the matter on appeal is a different

20  question, and the Court can consider those matters that are,

21  quote, in aid of the appeal, such as procedural matters.  And

22  that's the way we view the current motion to the Court.

23    The other cases cited by the Government,

24  **Ortega-Lopez**, held that the Court lacked jurisdiction -- excuse

25  me, the district court lacks jurisdiction to correct a

1  sentence.  Again, that's a substantive matter.

2          Likewise, the **Vromen** case, in that case it was the --

3  the Court held the district court lacked jurisdiction to

4  consider a reconsideration of probation revocation.  Again, a

5  substantive matter.  So we distinguish the jurisdictional

6  questions on that ground.

7          We believe the district court retains priority

8  jurisdiction to resolve the procedural question for now.  And,

9  again, the substantive question as to whether or not the

10  transport should go forward is certainly a matter that we

11  concur with the Government is properly now left to the

12  appellate court.

13          THE COURT:  Thank you, Mr. Federico.

14          Mr. Knight, on jurisdiction.

15          MR. KNIGHT:  Thank you, your Honor.

16          With respect to jurisdiction, I think as a threshold

17  matter, the parties agree what the rule is and what the cases

18  are.  The difference is an interpretation of the facts.

19          And in this instance, to say that there's a

20  procedural and substantive difference is a distinction without

21  a difference.  The procedure is the substance of the appeal.

22  The very idea that the basis of the appeal and the arguments

23  underlying the appeal relate to the transport itself and to the

24  stay and the attendant concerns about the deprivation of rights

25  with the movement of the defendants is the same as the

11

1   procedure.  So there's no difference.  So, to split hairs and

2   to claim that really there is a procedural issue before the

3   Court and a separate substantive issue now contained in the

4   appeal, we believe, is inaccurate.

5           And the cases that have been cited, we agree with.

6   And we would argue that their holdings do in fact bind this

7   Court and properly lay a factual and legal foundation for the

8   conclusions set forth in the brief; and that is, by virtue of

9   the arguments the defendants have made about the transport of

10  these defendants, this Court has been divested of jurisdiction

11  on this narrow issue.

12          THE COURT:  All right.  Well, let's move to the

13  merits argument, so that I have a full record here before I

14  have to decide this issue.

15          The Government filed its opposition on the merits.

16  Your primary grounds are ones that were actually argued in the

17  first instance, Mr. Federico, in opposition to the order.

18          So if there's something else you wanted to add or

19  emphasize, I'll hear from you and then from Mr. Knight.

20          MR. FEDERICO:  Thank you, your Honor.

21          Yes.  The starting point, I think the parties both

22  agree that the **Nken** factors from the Supreme Court would apply

23  to the motion to stay.  I won't rehash the arguments, but will

24  sort of give an oral reply to the Government's response.

25          The first factor is the likelihood of success on the

12

1    merits.  In fact, I don't think either party correctly -- or I

2    shouldn't say "correctly," but fully cited some case law that I

3    think gives a little more detail as to what that means.

4          For example, a case called **Leiva-Perez v. Holder.**

5    The citation for that is 640 Federal 3d 962.  That is a Ninth

6    Circuit case from 2011.  That case, the Ninth Circuit openly

7    acknowledged that there is uncertainty as to the exact degree

8    of what the likelihood of success has to be.  And it stated

9    that the test was a substantial case for relief on the merits.

10         So what is a substantial case?  I believe that in

11   this case we've easily met that threshold.  I mean, as this

12   Court acknowledged, when the issue was brought to the Court's

13   attention, this is a very unusual circumstance with these two

14   complex trials simultaneously and these are some very weighty

15   cons -- constitutional rights at issue.

16         And so I'll just stand on the briefs that have

17   already been filed, as to whether or not there is a substantial

18   case for relief.  But I just wanted to invite the Court's

19   attention to what the Ninth Circuit has said that standard

20   means.

21         As to the second factor of the irreparable injury,

22   again, the Court's order originally was that those -- any

23   injury or harm was premature.  The Government's response, they

24   called it, quote, purely speculative.

25         I would say that the same Ninth Circuit case I just

1    cited also detailed that this particular factor of irreparable

2    injury is very individualized.  It's very case specific.  And I

3    think that is important here because of the unusual nature of

4    these circumstances.  And -- and I would concur that we're

5    seeking to prevent a future infringement of rights.  So,

6    inherently, the process is forward-looking.

7          But here, I think there is some also some case law

8    that's informative, that states that when you bring the matter

9    of constitutional rights infringements to the Court's

10   attention, also it's telling as to what the review is.

11         For example, if you raise constitutional issues

12   pretrial versus post-trial -- and the analogy I'll give here is

13   **Brady**.  The Ninth Circuit, in the **Price** case, at 566 Federal 3d

14   900 -- and that's a 2009 case -- said that on -- on appellate

15   review, if you claim there's been a **Brady** violation, you have

16   to make a showing of materiality.  But when you're claiming

17   that same violation before it has owe -- the trial has been

18   adjudicated, you don't have to show materiality.  I think

19   that's again -- illustrates that when you bring the matter, in

20   terms of constitutional rights and infringement, that -- a

21   decision is made as to what -- the proper showing.  Because we

22   have argued and would argue that the defendants need not show

23   prejudice at this point because it's a structural issue.

24         And I'm also going to defer to Mr. Arnold.  I think

25   he has a comment regarding prejudice, as well.

1    In the Government's response, they stated that we

2  were not resting -- or, excuse me, that the terms of the

3  irreparable injury factor, that we're resting on an

4  unreasonable assumption that this Court -- the district courts

5  are incapable of fashioning, sort of, case management

6  procedures to protect the rights.  And I think that, again,

7  sort of mischaracterizes what the harm is we're articulating.

8    In the opening brief that we have provided as an

9  attachment to the Court, we stated there is a body of case law,

10  the Sixth Amendment -- particularly, rights to effective

11  assistance of counsel -- that talks about basically breaks in

12  contact between defendants and lawyers; and sometimes, in as

13  short as 17 hours, is found to be a violation of the Sixth

14  Amendment.

15    And so, really, as we said in the motion, we see

16  this -- or, excuse me, the opening brief in the Ninth Circuit,

17  is that the Government in the two districts within the

18  executive branch from the Department of Justice has asked the

19  Court to sort of referee and facilitate this process, which the

20  courts are capable of doing.  But, on the other hand, the

21  defendants are the ones who suffer the harm from that.

22    And there's a concern here, in terms of harm, that

23  what is likely to happen is if they're transported to Nevada,

24  there's going to be substantial litigation time spent on who is

25  where and when, and what they're going to be doing there.

15

1   Because, as we've been discussing all morning, this is very

2   difficult and challenging to come up with a case management

3   order here, with the number of defendants.  And I would just

4   imagine -- it's not even speculative -- that Nevada is going to

5   face the same problem.

6          Lastly, your Honor, regarding the third and fourth

7   **Nken** factors, which as the parties briefed, merge together

8   between the Government and the opposing party.  And those

9   factors are the harm to the other party and the public

10  interest.

11         The Government stated in its response that its motion

12  for stay is inconsistent, and the defendants are being

13  inconsistent with their demand for speedy trial.  And we would

14  state the opposite is true because what we are trying to do is

15  keep them here in Oregon, to keep their case on track.

16         And so that there is in fact -- trying to prevent any

17  events, such as a transport, that would interfere with their

18  case preparation in this case, here in the District of Oregon.

19         So not only do we see no inconsistency with the

20  demand for speedy trial, we believe a stay of the order in

21  seeking the appeal of the transfer order is in fact consistent

22  with the demand for speedy trial.

23         And so, your Honor, if I may also -- I just mentioned

24  a moment ago, I defer to Mr. Arnold.  I think that he had

25  some -- a point he wanted to make regarding potential

1  prejudice.

2          THE COURT:  Certainly.

3          Mr. Arnold.

4          MR. ARNOLD:  Thank you, your Honor.

5          Regarding the issue of prejudice, my client has not

6  been transported yet, so he doesn't have any actual prejudice.

7  But I do have proof that it's more likely than not that if he

8  is transferred, there is likely to be prejudice.

9          I have an affidavit that we received after hours last

10 night, and it is essentially from a woman named Deborah

11 Reynolds.  And she has been in contact with Peter Santilli --

12 who was transported previously -- on the phone.

13         And I have the affidavit.  But I was just going to

14 read portions -- or read it by way of proffer, or I could give

15 it to the Court.

16         THE COURT:  Who is Deborah Reynolds?

17         MR. ARNOLD:  Deborah Reynolds is the significant

18 other and co-host of *The Pete Santilli Show*.

19         THE COURT:  All right.

20         MR. ARNOLD:  She's in regular telephone contact with

21 Pete Santilli, and my understanding -- from speaking to her on

22 the phone -- regular contact with Pete's attorney, Tom Coan.

23         And she had received specific information from

24 Mr. Santilli, over the phone, that she conveyed to me.  And

25 then we had it reduced to a declaration, regarding his

1     deprivation of access to counsel while he is in Nevada.

2             And with the Court --

3             THE COURT:  Since the last hearing, he's been

4     transported to Nevada.  Is that what --

5             MR. COAN:  He was transported on Tuesday, your Honor.

6             THE COURT:  Thank you.  That point wasn't clear for

7     the record.

8             Go ahead.

9             MR. ARNOLD:  Sorry, your Honor.

10            THE COURT:  All right.

11            MR. ARNOLD:  Thank you.  Ms. Reynolds states that she

12     spoke to Mr. Santilli approximately three days prior to signing

13     this, which would have been the -- the -- the 2nd.

14            And he told me -- he told me that he could not

15     believe what's happened since he had been in Nevada.  The first

16     couple of days he thought he would just deal with the

17     conditions of incarceration, but found himself in a cell 23

18     hours a day.

19            And, your Honor, I'll just point out, by way of

20     proffer, this is a similar experience that they -- many of

21     defendants -- if not all of them -- saw here in Oregon.  That

22     there is a -- a jail policy at Multnomah County jail to do this

23     secluded treatment for 23 hours a day, basically, in order to

24     essentially process them.

25            I talked to Captain Peterson, at the jail.  And it

18

1    wasn't anything specific to these defendants.  It's just what

2    they claim they always do in order to do their intake process

3    for two weeks.

4           So, in essence, they're getting a solitary

5    confinement twice over.  They're being re-intaked.  Apparently

6    at least Mr. Santilli is, down there.  And the problem with

7    that is he is essentially in lockdown.  And that this is --

8    again, back to the proffer.  That means he is only allowed to

9    come out of his cell when there are no other inmates present.

10    This means that he's only allowed to come out of his cell late

11    at night, 11:00 p.m. local time.  That means that he can only

12    contact his attorneys during that time.  It's my understanding

13    he eventually -- after the phone call I had with Ms. Reynolds,

14    he was able to reach out and speak to Mr. Coan during business

15    hours, and I don't have any other details about that.

16           At the time, it prevented him from contacting his

17    attorney in Oregon and also prevented him from having family

18    time, and everything else.

19           And we know, by way of proffer from Mr. Bundy's

20    experience in Oregon, during that one-hour time, he has to

21    shave, he has to clean his cell, he has to do personal

22    business, he has to call his family.  And then, you know, he

23    can shower and then find time to, you know, do -- do all of

24    these personal things that -- you know, cleanliness, that's

25    sort of a, you know, natural right to do.  And, also, if you

19

1   transfer that obligation -- the personal obligations to the

2   Nevada situation, you also have to call your lawyer.

3           THE COURT:  So you're saying this exists for the

4   first 24 hours?

5           MR. ARNOLD:  No.  It was two weeks here in Oregon.

6   And apparently it was -- if it was last Tuesday through

7   Friday -- or Tuesday through Saturday.  So Tuesday, Wednesday,

8   Thursday, Friday -- five days in Nevada.

9           DEFENDANT AMMON BUNDY:  My dad and brother are

10  still --

11          MR. ARNOLD:  Yeah.  Hold on.

12          By way of proffer, my understanding, from speaking to

13  Carol Bundy and from speaking to her -- or Mr. Cliven Bundy's

14  attorney, he's been in some sort of similar conditions for over

15  a month.

16          THE COURT:  All right.

17          MR. ARNOLD:  Apparently, since -- just by way of

18  candor, also since he began raising these issues with the jail

19  guards, he's been allowed out of his cell for two hours a day;

20  apparently starting on Saturday, is my understanding.  He was

21  able to apparently talk to his Oregon attorney during that day,

22  which I believe would have been -- what day is today?  Would

23  have talked to his attorney on Monday.

24          The guards -- this is hearsay within hearsay.  But

25  the guards personally told Pete, who told Mr. Reynolds -- or

1   Mrs. Reynolds, that it was a hardship on jail staff to take the

2   efforts necessary to keep him from other inmates while in

3   custody.

4           So it appears that there's a suggestion that they're

5   doing it, you know, for the purported safety of the individual

6   defendants.

7           And what I would ask -- in addition to the stay --

8   and the Court asked what could be done in relation to

9   Mr. O'Shaughnessy.  I think all of the defendants would benefit

10  from a proactive approach to -- to protecting their rights that

11  are -- could potentially be inhibited based upon this

12  information.

13          We would ask that the Court require the Government to

14  show cause through an evidentiary hearing, where the Court can

15  actually evaluate the condition of the facilities by way of --

16  you know, we can Skype it or telephone call, or whatever.  Have

17  the warden of these jails, have the -- have the main jailer

18  that's helping with Mr. Santilli, we can flesh out factually

19  what is actually occurring and the Court can inquire, as

20  opposed to the -- you know, the executive branch, through the

21  U.S. Attorney's inquiring.

22          THE COURT:  Thank you.

23          Mr. Coan, did you want to add anything to that?

24          MR. COAN:  What I can add to that, your Honor, is I

25  will say, Mr. Santilli's being held at the Anderson County

1   Detention Center, just outside of Las Vegas.

2          I cannot make any calls in to him.  He can only make

3   calls to me.  So my communications with him are, you know, not

4   good, because I don't know when --

5          THE COURT:  Has he been -- I'm sorry.

6          MR. COAN:  I don't know when he's going to call.

7          THE COURT:  Has he been appointed counsel there?

8          MR. COAN:  He was appointed counsel.  That -- that

9   attorney, as of yesterday, had not visited him.

10          THE COURT: All right.  As yet.

11          MR. COAN:  As of yet.

12          THE COURT:  All right.  And just to refresh my memory

13   of the order that is the subject of this interlocutory appeal,

14   it also anticipated that if that order was exercised according

15   to its terms, Mr. Santilli would be returned to Oregon once

16   those who were transported were returned.

17          MR. COAN:  There was an alternative plan, your Honor.

18   We had hoped to have a detention hearing or a review of

19   detention down in Las Vegas before the 13th.  Because it's my

20   understanding that if the Court doesn't stay this order, these

21   defendants, here, will be transported down on the 13th.  The

22   marshals may be able to transport Mr. Santilli back up here at

23   that time.  If he hasn't had his review of detention hearing at

24   that time, it will be the 23rd.

25          THE COURT:  All right.  So I understand the point

22

1  about prejudice, having to do with the manner of confinement in

2  Nevada; the concerns the defendants have who are the subject of

3  this order.

4         So were there any other points before I hear from the

5  Government?

6         MR. ARNOLD:  My client reminded me that -- another

7  issue that was brought to our attention was the lack of --

8  traveling with the legal documents.

9         THE COURT:  I addressed that at the last hearing.

10         MR. ARNOLD:  Right.  And I believe Mr. Coan --

11         MR. COAN:  I can also add to that, your Honor.  I

12  was -- the marshals here tried to accommodate.  Mr. Gabriel

13  told me that he -- Mr. Santilli would be able to take with him

14  up to a large envelope of documents with him.

15         I gave him an envelope to secure some discovery

16  documents, that he could look at in his travels.  When he

17  actually made the travel, he was told he couldn't take

18  anything.  So those have all been returned to me, and he

19  doesn't have any discovery materials down there.

20         THE COURT:  They are back in your possession?

21         MR. COAN:  Yes.

22         THE COURT:  Thank you.  All right.

23         Mr. Knight.

24         MR. KNIGHT:  Thank you, your Honor.

25         With respect to the merits, I'll focus only on the

SUPPLEMENTAL EXCERPTS OF RECORD  22

23

1    second factor laid out in the parties' briefing, and the
2    Government will rely on its briefs for the other factors.  And
3    that factor is whether or not there is indeed irreparable
4    injury absent a stay.  And, again, I get back to the language
5    "irreparable injury."
6            What has been proffered to the Court today and what
7    already exists in the record does not amount to what would
8    constitute an irreparable injury.  It is, by and large,
9    speculative.
10           And I want to speak specifically, right now, of
11   course, to the concerns about confinement in Nevada because the
12   harm has to be attendant, of course, to the Court's order
13   itself.  Not just general confinement conditions here in the
14   District of Oregon, but really as they relate to Nevada.
15           Nothing that has been proffered would suggest there
16   is an irreparable injury or such a severe injury to the
17   defendant's Sixth Amendment rights such that his rights -- in
18   this case, Mr. Santilli's rights -- have been impaired.
19           It was conceded that Mr. Santilli had some contact
20   with Mr. Coan.  And I can't speak to the efficacy of the
21   procedures in the jail there.  But the bottom line is the
22   record, as it stands right now before this Court, suggests that
23   Mr. Santilli is still receiving representation as a result of
24   the order that's already been effectuated.  And there is
25   nothing to suggest -- going forward with these other

24

1    defendants -- that the District Court in Nevada or the Marshals

2    Service can't ensure that they will have access to counsel or

3    legal materials, going forward.  And that seems to be the

4    issue -- the narrow issue as presented by these new arguments

5    today.

6            And with that, your Honor, the Government will rest

7    on the existing arguments in the brief, and supplement it only

8    with the fact, again, that the arguments about harm appear to

9    be purely speculative.  And even if accepted at face value,

10   don't rise to the level of irreparable injury.

11           THE COURT:  All right.  Give me a moment, please.

12           (Pause, referring.)

13           THE COURT:  I have taken seriously the arguments

14   defendants raise on all grounds.

15           I conclude that the question the Government has

16   raised as to the Court's jurisdiction to consider the

17   defendants' motion to stay is, in any event, moot, because I

18   don't find the stay as warranted when I consider all of the

19   factors that I'm required to consider.

20           It is and remains a most unusual situation the

21   defendants are facing here.  The Court's authority over this

22   prosecution does not extend to controlling the manner in which

23   a co-equal court in Nevada chooses to control a proceeding

24   involving some of the same parties.

25           I tried intentionally to make the order I did enter

25

1    narrow, time specific, and limited to the one anticipated

2    transport that I've authorized.  And I believe, in doing so, I

3    have rendered inarguable, really, the argument of irreparable

4    injury.  The whole format and extent of the order is that

5    defendants will be away for a period of about ten days.  And I

6    don't find under any of defendants' arguments that that in any

7    way is an injury to their constitutional rights:  The right to

8    access to counsel here; their right to speedy trial here; their

9    right to due process here.

10        The extent to which they wish to challenge -- if my

11   order stands -- in Nevada the impact of that order on them

12   there, that's a matter for the Nevada court to address.

13        It's clear that this Court does not have any

14   authority to address the arguments about the manner of

15   confinement or access to counsel when defendants are confined

16   in another judicial district.

17        It's clear the defendants who are the subject of this

18   order do not want to go to Nevada, and I have -- and I

19   certainly appreciate their need to be here and to move forward

20   on the schedule that I'm trying very hard to implement so that

21   we do commence a trial at what I believe is the earliest

22   feasible time, beginning with jury selection on September 7.

23        I don't believe there's any showing, then, of a

24   likelihood of success on the merits here because the fact that

25   it's an unusual case doesn't -- doesn't equal a substantial

1    case for relief on the merits; the narrow tailoring of the

2    order itself minimizes any risk of a constitutional violation;

3    and ten days is just that, ten days.

4             I don't believe any injury the defendants anticipate

5    is irreparable.  I don't believe that there is any significant

6    Government or public interest in not allowing the District of

7    Nevada to have the defendants for this limited period of time.

8    And more pract -- pragmatically, I believe I do need the

9    confirmation by the Ninth Circuit Court of Appeals that this

10   order should stand.

11            And if I'm wrong on these analyses, then it's

12   important that that decision get made by a higher court now for

13   the future progress of this case and the one in Nevada.  If --

14   if the Ninth Circuit Court of Appeals believes the defendant

15   should not be transported, they know now of the urgency of the

16   matter.

17            I know Mr. Federico and counsel for the affected

18   parties will be contacting the court, the Ninth Circuit Court

19   of Appeals, promptly after this session today, to let them know

20   that I did not stay the order.  And that they will need to

21   address it or the marshal will in fact transport.  The order

22   remains in effect until an authority overrules it or says it is

23   no longer in effect.  And I do not intend to do that here.

24            So, therefore, I don't need to resolve what I think

25   is an interesting theoretical question about jurisdiction.

27

1   Because if I did have jurisdiction, I would deny the motion to

2   stay on the matters for the reasons indicated; and if I don't

3   have jurisdiction, then the question is moot.

4           So I look forward to the Ninth Circuit providing all

5   of us with controlling direction on this problem.  I do not

6   anticipate the issue would arise again here in Oregon, as I've

7   already indicated, and so I'm denying the motion to stay.

8           Mr. Bundy.

9           DEFENDANT RYAN BUNDY:  Yes, your Honor.  I

10  respectfully take exception to your ruling.  I do feel that

11  there would be irreparable -- irreparable damage.  As far as I

12  know, to date, there is no method and science to move back in

13  time the time that we would lose in transport, in -- in booking

14  in and out, et cetera, et cetera; as time that would be lost on

15  both cases, for both trials, that would not be irreparable.

16          And, you know, you -- you, as a judge, do have the

17  power and the authority to -- to stay that motion, to move us.

18          THE COURT:  Well, Mr. Bundy, I didn't say I didn't

19  have the power.

20          DEFENDANT RYAN BUNDY:  I understand.

21          THE COURT:  I said, on the merits, I don't believe

22  it's warranted here.

23          DEFENDANT RYAN BUNDY:  I understand.

24          MS. LUDWIG:  Is that it?

25          DEFENDANT RYAN BUNDY:  Say that again?

28

1      (Pause, Ms. Ludwig and Defendant Ryan Bundy

2      conferring.  Ms. Ludwig and Defendant Bundy sit.)

3      THE COURT:  You're -- all of the defendants affected

4  by my original order have an exception to the ruling just made.

5      As I expect, Mr. Federico will be in touch with the

6  Court of Appeals promptly to see if they will provide expedited

7  guidance on whether a ruling on any issue is forthcoming before

8  the close of business on April 12.

9      (Conclusion of excerpt.)

10

11                          --oOo--

12

13  I certify, by signing below, that the foregoing is a correct

14  stenographic transcript of the oral proceedings had in the

15  above-entitled matter this 7th day of April, 2016.  A

16  transcript without an original signature or conformed signature

17  is not certified.  I further certify that the transcript fees

18  and format comply with those prescribed by the Court and the

19  Judicial Conference of the United States.

20

21      /S/ Amanda M. LeGore
   _____

22      AMANDA M. LeGORE, CSR, RDR, CRR, FCRR, CE
          CSR No. 15-0433  EXP:  3-31-2018

23

24

25

| 9th Circuit Case Number(s) | 16-30080 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)              .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  Apr 8, 2016  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

C. Michael Arnold, Arnold Law, 401 E 10th Ave., Ste. 400, Eugene, OR 97401 (A. Bundy)
Todd E. Bofferding, 1215 B Street, P.O. Box 539, Hood River, OR 97031 (Cavalier)
Krista Shipsey, 820 SW 2nd Avenue, Suite 275, Portland, OR 97204 (Cooper)

Signature (use "s/" format)  s/ Rich Federico