No. 16-30080
_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

v.

**AMMON BUNDY,
RYAN PAYNE,
RYAN BUNDY,
BRIAN CAVALIER,
and BLAINE COOPER,**

**Defendants-Appellants.**
_____

**Interlocutory Appeal & Petition for Writ of Mandamus
from the United States District Court for the District of Oregon
Portland Division**
_____

**DEFENDANTS-APPELLANTS' SUPPLEMENTAL
BRIEF ON THE ISSUE OF MOOTNESS**
_____

Lisa Hay
Federal Public Defender
Rich Federico
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone
(503) 326-5524 Facsimile
Attorneys for Defendant Ryan Payne

# TABLE OF CONTENTS

Table of Authorities .................................................................. ii

Introduction ...........................................................................1

Supplemental Facts and Procedural History ...............................3

Argument................................................................................8

    A.    The Appeal Presents a Live Case or Controversy Because the Federal Government's Simultaneous Prosecutions of Defendants in Two Districts Affects Important Constitutional Rights. ..................8

    B.    The Execution of the Writ of Habeas Corpus Ad Prosequendum is Capable of Repetition But Without this Court's Exercise of Jurisdiction Will Evade Review.........................................................13

    C.    The Government's Pledge of Voluntary Cessation of Seeking Continued Transport of the Defendants Between Oregon and Nevada Does Not Moot the Issue......................................................15

    D.    This Court Can Grant Meaningful Relief Despite the Intervening Execution of the Writ After the Filing of the Appeal. ........................17

Relief Sought.........................................................................19

Conclusion ...........................................................................20

i

## TABLE OF AUTHORITIES

### FEDERAL COURT CASES

*Bauman v. U.S. District Court,*
    557 F.2d 650 (9th Cir. 1977) ........................................................12

*Chapman v. California,*
    386 U.S. 18 (1967).......................................................................11

*Church of Scientology v. United States,*
    506 U.S. 9 (1992)............................................................... 8, 9, 18

*City of Mesquite v. Aladdin's Castle, Inc.,*
    455 U.S. 283 (1982).....................................................................15

*Dream Palace v. Cty. of Maricopa,*
    384 F.3d 990, 1022 (9th Cir. 2003) ............................................ 17

*Faretta v. California,*
    422 U.S. 806 (1975)................................................................ 12, 15

*Flagstaff Med. Ctr., Inc. v. Sullivan,*
    962 F.2d 879 (9th Cir. 1992) ........................................................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
    528 U.S. 167 (2000)................................................................ 15, 16

*Holloway v. Arkansas,*
    435 U.S. 475 (1978).....................................................................11

*Lafler v. Cooper,*
    132 S. Ct. 1376 (2012).................................................................19

*McCormack v. Herzog,*
    788 F.3d 1017 (9th Cir. 2015) .....................................................16

*Mills v. Green,*
    159 U.S. 651 (1895).......................................................................8

*Native Vill. of Noatak v. Blatchford,*
   38 F.3d 1505 (9th Cir. 1994) ...................................................................14

*United States v. Concentrated Phosphate Exp. Ass'n,*
   393 U.S. 199 (1968)..................................................................................16

*Nw. Environmental Defense Ctr. v. Gordon,*
   849 F.2d 1241 (9th Cir. 1988) .....................................................................8

*Powell v. McCormack,*
   395 U.S. 486 (1969)....................................................................................9

*Simmons v. United States,*
   390 U.S. 377 (1968)..................................................................................10

*Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.,*
   565 F.3d 545 (9th Cir. 2009) ...................................................................10

*Spencer v. Kemna,*
   523 U.S. 1 (1998)......................................................................................14

*United States v. Bergeson,*
   425 F.3d 1221 (9th Cir. 2005) .................................................................11

*United States v. Irwin,*
   612 F.2d 1182 (9th Cir. 1980) .................................................................11

*United States v. Price,*
   566 F.3d 900 (9th Cir. 2009) ...................................................................12

*United States v. Sanchez-Gomez,*
   798 F.3d 1204 (9th Cir. 2015) .................................................................14

*United States v. W.T. Grant Co.,*
   345 U.S. 629 (1953)..................................................................................16

**FEDERAL STATUTORY AUTHORITIES**

28 U.S.C. § 2106................................................................................................8

iii

## INTRODUCTION

In the appeal and petition for writ of mandamus, defendants sought this Court's intervention to reverse the district court's order to transport the defendants from the District of Oregon to the District of Nevada, vacate the writ of habeas corpus ad prosequendum, and grant such further relief as law and justice require. Dkt. 5 at 33. The Court ordered supplemental briefing to address whether this appeal is now moot. Dkt. 34.

This appeal is not moot because the important constitutional issues raised–the unlawfulness of the district court's order and the harm to constitutional rights of the defendants from that order–have not been resolved. The fact that the challenged writ was executed and the harm has now begun does not render the appeal moot. On the contrary, the current harm to the defendants is compounded by the passage of time, as the defendants' rights to a speedy trial, to effective assistance of counsel, and to due process are jeopardized by the need to devote attention to two sets of counsel, two sets of discovery, and two scheduled trials simultaneously. In addition, the potential for additional disruption of the Oregon proceedings by involuntary, out-of-state transportation of the defendants is not illusory, because the Nevada writ provides for such travel "for arraignment and from time to time and day to day

1

thereafter" until excused by the Court. OR Dkt. 344[1]; SSER 62[2]. The unlawful execution of the writ is capable of repetition without allowing time for appellate review. This Court has the authority and ability to remedy the constitutional violations caused by the simultaneous federal prosecutions in two districts by issuing an order invalidating the writ and vacating its effects, reverting the parties to the *status quo ante*. Finally, by providing the guidance requested by the lower court, the Court would be ruling on matters directly relevant to pending issues in the district court, which once resolved, will promote judicial efficiency and avoid potential error.

The defendants find themselves in the grip of an impossible and unprecedented situation. As stated by the Oregon district court, "this is a very unusual circumstance with these two complex trials simultaneously and these are some very weighty [ ] constitutional rights at issue." OR Dkt. 388 at 12:13-15; SER 12[3]. Neither the defendants nor the government have located a single case, from any

---

[1] OR Dkt. refers to the Oregon District Court Docket (Case No. 3:16-cr-00051-BR).

[2] SSER refers to the Second Supplemental Excerpts of Record filed simultaneously with this Supplemental Brief.

[3] SER refers to the Supplemental Excerpts of Record filed with the Reply Brief on April 8, 2016. Dkt. 18.

circuit, approving of involuntary transfers of in-custody defendants to pursue simultaneous prosecutions by the same sovereign in distant locales. The Oregon district court believed the co-equal Nevada district court had the authority to issue writs to transport the defendants away from Oregon. *See* Dkt 5; ER 3-4. OR Dkt. 334; SSER 62. The defendants sought relief in Nevada by filing a motion to dismiss and sought a stay of their return transport to Oregon to litigate the motion to dismiss, only to have the Nevada district court defer to the Oregon court. NV. Dkt. 301, 308[4]; SSER 164, 165. This Court should break the stalemate between the two district courts in order to protect the important trial rights at stake and to preserve the constitutionally based rules for priority of prosecutions, the Speedy Trial Act, and the Sixth Amendment right to counsel.

## SUPPLEMENTAL FACTS AND PROCEDURAL HISTORY

As this Court is aware, the defendants previously petitioned both the Oregon District Court and the Ninth Circuit Court of Appeals to prevent their transfer to the District of Nevada until the Oregon proceedings were concluded. *See* Interlocutory Appeal & Petition for Writ of Mandamus, Dkt. 5; Unopposed Emergency Motion for Court Order Prohibiting U.S. Marshals from Removing Ryan Payne and Listed

---

[4] NV Dkt. refers to the Nevada District Court Docket (Case No. 2:16-cr-00046-GMN-PAL).

Defendants from the District of Oregon, OR Dkt. 331; SSER 60. The defendants based this request on the fact that the transport to Nevada would unnecessarily trigger the beginning of legal proceedings against them in Nevada and place them in the impossible position of simultaneously defending themselves against complicated criminal charges in two districts roughly 1,000 miles apart. *See* Dkt. 5; OR Dkt. 331. Neither court granted the defendants the relief they sought, and the United States Marshals transported the defendants to Nevada to make their first appearance in that case. *See* NV Dkt. 249, 308; SSER 157-158, 165. The defendants were in custody in Nevada from April 13 to April 25, 2016. Now, as a result of the challenged order, the defendants are facing the unwarranted difficulties of preparing for trial in both Oregon and Nevada simultaneously.

After the defendants appeared in Nevada, the Nevada District Court declared that case complex. *See* NV Dkt. 321 (case management order); SSER 168. That decision was based, in large measure, on the vastness of the case and the amount of discovery that must be reviewed. *Id.* For example, over 100 law enforcement officers were involved in the underlying incidents in Nevada, in excess of 100 witness interviews were conducted in the investigation (which according to the government remains ongoing), and there are over 1.4 terabytes of electronic

4

discovery materials to be provided to the defendants. *Id.* Within that universe of discovery, there are hundreds of hours of video and audio. *Id.*

The defendants—who are again in custody in Oregon—have no meaningful way to review those materials for the Nevada case unless their Nevada counsel travel to Oregon and bring laptops or tablets with them for lengthy visits. *See* NV Dkt. 418 at 6; SSER 178. There is no realistic way that this can happen—while meaningfully protecting the defendants' rights—when defendants are also preparing to defend themselves on separate charges in Oregon.

The government has described the discovery issues in the Oregon case as perhaps "the most complicated in the history of the district." *See* OR Dkt. 185 at 2; SSER 46. As of the date of this filing, in Oregon there have been thirty-six discovery productions of such large data size that a third-party vendor was required to process the information. The Oregon District Court declared the case complex, relying in part on the large amount of discovery, "the duration of the crimes alleged in this matter (which span more than 40 days), and the distant location of the crime scene." OR Dkt. 289 at 5; SSER 56. The court also noted the difficulty of preparing for a trial involving 24 defendants in the same courtroom, summonsing and screening a 1,500 jury pool, and coordinating more than two dozen attorneys' schedules. *See Id.* at 3-5; SSER 56.

Trial in Oregon is scheduled to begin on September 7, 2016. The parties expect trial to last several months and perhaps through the 2016 holidays. OR Dkt. 389 at 2; SSER 66. Meanwhile, the Nevada trial is scheduled to begin on February 6, 2017, about the time the defendants in Oregon might be set for sentencing, were any to be convicted. NV Dkt. 321 at 13; SSER 168.[5] Defendants' pretrial motions are due in Nevada on October 3, 2016, during the middle of their Oregon trial. *Id*. A motion to sever in Nevada is due on May 27, 2016, despite the fact that defendants have had no meaningful opportunity to confer with Nevada counsel or review discovery since their return to Oregon on April 25, 2016. *See* NV Dkt. 418 at 7; SSER 178.[6]

On April 20, 2016, Mr. Payne's Nevada counsel filed a Motion to Dismiss with the Nevada court, outlining the impossible situation in which Mr. Payne finds

---

[5] A Standing Order of the Oregon district court provides that sentencing hearings should be set at least 98 days after entry of guilty plea or verdict to allow adequate time for preparation of the presentence report. Standing Order 2013-2, In Re: Sentence and Judgment, Time of Sentencing, and Disclosure of Presentence Report, available at: <https//www.ord.uscourts.gov/index.php/court-info/standing-orders?start=20>.

[6] As an illustration of the harm to the right to effective representation, during the thirteen days Mr. Payne was in Nevada, Mr. Payne and his Oregon counsel had no meaningful contact due to contraints both while in custody and during transportation. *See* OR Dkt. 480 at 4-5; SSER 74.

himself (having to choose in which case he wants to enforce his constitutional rights) and asking the Nevada court to dismiss the charges against him in Nevada with prejudice. *See* Nev. Dkt. 291; SSER 163. Mr. Payne's Nevada counsel also filed an emergency motion to stay his transport back to Oregon until the motion to dismiss could be litigated. *See* Nev. Dkt. 301; SSER 164. Mirroring the Oregon court's order of March 22, 2016 (OR Dkt. 334; SSER 60), the Nevada District Court denied the emergency motion to stay, finding that "Defendants' Motion to Stay fails to provide the legal basis for this Court's jurisdiction and why this Motion should not be heard by the Oregon District Judge." *See* Nev. Dkt. 308; SSER 165.

Mr. Payne's Oregon counsel filed a motion to dismiss on April 27, 2016. OR Dkt. 480; SSER 74. Like the motion to dismiss in Nevada, the Oregon motion highlights the infringements on Mr. Payne's right to effective counsel, speedy trial, and due process of law. On May 23, 2016, the Oregon District Court deferred consideration on this motion based upon the advice of the parties that guidance from this Court regarding this appeal would be helpful to both trial courts. OR Dkt 597 at 3; SSER 87.

## ARGUMENT

### A. The Appeal Presents a Live Case or Controversy Because the Federal Government's Simultaneous Prosecutions of Defendants in Two Districts Affects Important Constitutional Rights.

This appeal challenges the lawfulness of a district court order that facilitated the simultaneous prosecutions of the defendants in two districts. Only by execution of the writ of habeas corpus ad prosequendum was the government able to start the Nevada prosecution. The fact that the order has now been executed does not render the issues moot, as the constitutional harm and prejudice to defendants has only been exacerbated by the execution of the writ. More importantly, the execution of the writ did not make it impossible for this Court to grant "any effectual relief whatever" to defendants, as a live controversy continues. *See Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (citing *Mills v. Green*, 159 U.S. 651, 653 (1895)).

The Court has a wide range of remedial action available including not only declaring the unlawfulness of the simultaneous prosecutions but returning the defendants to the *status quo ante* by vacating proceedings entered pursuant to unlawful orders. 28 U.S.C. § 2106. Nothing about this appeal is moot or abstract. Rather, the constitutional harms foreseen by the defendants when the appeal was originally filed have increased, and the issues at controversy in this appeal never ceased. *See Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988)

("[W]here the violation complained of may have caused continuing harm and where the court can still act to remedy such harm by limiting its future adverse effects, the parties clearly retain a legally cognizable interest in the outcome."). This Court has the authority to invalidate the writ of habeas corpus ad prosequendum issued by the Nevada court, vacate its effects, and revert the parties to the *status quo ante* of the time prior to the writ being executed on April 13, 2016.

Even when a court may not be able to return the parties to the *status quo ante*, the availability of a partial remedy is sufficient to prevent a case from being moot. *See Church of Scientology,* 506 U.S. at 13 ("Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred..., a court does have power to effectuate a partial remedy.... The availability of this possible remedy is sufficient to prevent this case from being moot.").  Additionally, this Court rendering a decision makes particular sense in this case because there is no controlling authority stating a rule of law, based upon analogous facts, and the District Court has specifically requested and welcomed an appellate ruling. *See* OR Dkt. 388 at 26:8-13; SER 26.  As the District Court stated: "I believe I do need the confirmation by the Ninth Circuit Court of Appeals that this order should stand.  And if I'm wrong on these analyses, then it's important that that decision get made by a higher court now for the future progress of this case and the one in Nevada." *Id.*

9

Assuming, *arguendo*, the transport of the defendants to Nevada is to be viewed as a single, isolated event of limited duration, completion of the transport does not eliminate the need for a ruling on the lawfulness of the transport, as it affected fundamental Fifth and Sixth Amendment rights. *See Powell v. McCormack*, 395 U.S. 486, 497 (1969) ("Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy."); *Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 884 (9th Cir. 1992) ("The mootness doctrine asks the basic question whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.") (internal quotations and citations omitted). Again, "[t]he question is not whether the precise relief sought at the time [the writ] was filed is still available. The question is whether there can be any effective relief." *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.,* 565 F.3d 545, 559 (9th Cir. 2009).

Unless this Court exercises its power to intercede, the defendants will have no meaningful relief and will continue to suffer irreparable harm. They will be forced to surrender constitutional rights in one district in order to assert them in another district. *See Simmons v. United States*, 390 U.S. 377, 394 (1968) ("[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another.") For example, should defendants focus their time on reviewing and

10

discussing with Oregon counsel the terabytes of data produced in discovery in the Oregon case, which is set for trial in less than five months, they will necessarily be forced to ignore the pending motions and impending discovery in the Nevada case.

Put another way, if defendants continue to seek to exercise their rights to a speedy trial in both cases, the government's charging decisions and simultaneous prosecutions make it impossible for defendants to obtain meaningful representation and mount an adequate defense in either district. *See United States v. Irwin*, 612 F.2d 1182, 1185 (9th Cir. 1980) ("It is clear that government interference with a defendant's relationship with his attorney [m]ay render counsel's assistance so ineffective as to violate his Sixth Amendment right to counsel and his Fifth Amendment right to due process of law."); *United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005) ("A client's confidence in his lawyer, and continuity of the attorney-client relationship, are critical to our system of justice.").

The harm is obvious when the government's charging decision has forced defendants to consider whether to waive rights to effective assistance of counsel and speedy trial in one location in order to adequately defend themselves in the other. It is likely that the the Nevada Court will need to hold hearings prior to the conclusion of the Oregon case. If defendants are transported to Nevada, they will again lose critical time preparing and time in contact with their Oregon counsel. *See Holloway*

11

*v. Arkansas*, 435 U.S. 475, 489 (1978) ("[T]he assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error'") (quoting *Chapman v. California,* 386 U.S. 18, 23 (1967)). If they attempt to stay in Oregon—and are not forcibly transported—they risk missing "stages of the [Nevada] proceedings where fundamental fairness might be thwarted by [their] absence." *See Faretta v. California*, 422 U.S. 806, 816 (1975).

The defendants would not be in such a precarious situation had the government followed the normal order of consecutive proceedings. The collateral order doctrine applies because the infringement on speedy trial rights and the right to counsel – whether or not sufficient for reversal – are protected in the pretrial context. *See United States v. Price*, 566 F.3d 900, n.14 (9th Cir. 2009) ("[T]he 'materiality' standard usually associated with *Brady* ... should not be applied to pretrial discovery of exculpatory materials."). Even if the collateral order doctrine did not apply, the unavailability of a direct appeal would establish that the "extraordinary remedy" of the writ of mandamus is the only relief that will preserve their constitutional rights. *See Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977).[7]

---

[7] Even more so than at the time of the filing of the defendants' Reply Brief, all five factors of the mandamus analysis weigh heavily in favor of relief: 1) the defendants have no other adequate means to attain the relief they desire; 2) the

**B.** **The Execution of the Writ of Habeas Corpus Ad Prosequendum is Capable of Repetition But Without this Court's Exercise of Jurisdiction Will Evade Review.**

The writs of habeas corpus ad prosequendum that caused the transport of the defendants to Nevada remain in effect, and there have been no district or appellate court orders cancelling or quashing the writs. Those writs call for the defendants to appear in Nevada "for arraignment and from time to time and day to day thereafter, at such times and places as may be ordered and directed by the [Nevada District Court]." ER 74-79. And, while it is true that the Oregon District Court authorized the transport of the defendants to Nevada as a single event, *see, e.g.*, OR Dkt. 334 at 4-5; SSER 60, the Oregon District Court has questioned its authority to interfere with or "control[] the manner in which a co-equal court in Nevada chooses to control a proceeding involving some of the same parties." OR Dkt. at 388 at 24:22-24; SER 24. The writs—coupled with the fact that the defendants now find themselves simultaneously defending against two active, complex cases in separate jurisdictions while incarcerated and with limited access to discovery materials and counsel—

---

defendants are being irreparably harmed in not one but two cases; 3) the Nevada and Oregon district courts' allowance of the two cases to proceed is clearly erroneous as a matter of law; 4) the harm will continue to occur for the duration of the cases; and 5) this interlocutory appeal and petition for writ of mandamus raise new and important issues of first impression. *See Bauman*, 557 F.2d at 654-55.

create precisely the type of harm that is guaranteed to continue unless this Court intervenes.

As its name implies, the "capable of repetition yet evading review" exception to the mootness doctrine is comprised of two elements that must be met in order for the exception to apply:

> First, there must be a "reasonable expectation" that the same complaining party will be subject to the same injury again. Second, the injury suffered must be of a type inherently limited in duration such that it is likely always to become moot before federal court litigation is completed.

*Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1509-10 (9th Cir. 1994) (citations omitted); *see also Spencer v. Kemna*, 523 U.S. 1, 17 (1998).

Regarding the first element, the defendants are currently facing simultaneous prosecutions so they are subject to the same injury initially raised. Further, the Nevada trial has case deadlines of meaningful events (e.g., motions deadlines) that will occur in the middle of the trial in Oregon. Finally, the same transport order may reasonably be expected to be executed again to transport the defendants to Nevada for critical hearings. *See United States v. Sanchez-Gomez*, 798 F.3d 1204, 1206 (9th Cir. 2015) (holding an exception to the mootness doctrine applied despite appellants no longer being detained because any constitutional harm caused by shackling a

14

defendant at a non-jury proceeding is likely to be repeated yet will not last long enough to be judicially reviewed.).

As to the second element, despite the best attempts of the defendants to stop and prevent it, the transport to Nevada was an event too short in its duration to have been fully reviewed by this Court before it occurred. And the harm of future transports, which would interfere with preparation for trial in the Oregon case, are likely to recur, especially where the defendants have a right to appear at all "stages of the [Nevada] proceedings where fundamental fairness might be thwarted by [their] absence." *Faretta*, 422 U.S. at 816. Conversely, the defendants should not be forced to sacrifice their right to a speedy trial, as the government has suggested, *see* NV Dkt. 383 at 12-13; SSER 174, or to sacrifice their right to effective representation, in either case. The government's choice to pursue cases simultaneously in two districts is an exceptional case, capable of repetition, yet evading review.

### C. The Government's Pledge of Voluntary Cessation of Seeking Continued Transport of the Defendants Between Oregon and Nevada Does Not Moot the Issue.

The government has suggested that the defendants' claims regarding their deprivation of effective counsel and speedy trial are invalid or moot because it will not try to remove the defendants to Nevada again until the proceedings in Oregon

conclude. *See* NV Dkt. 383 at 13; SSER 174. This argument ignores the obvious fact that it is the court, not the government, that sets dates for hearings and issues the command that defendants appear. It is "well settled [law] that 'a [party's] voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982)). The government cannot make the issues in this interlocutory appeal and petition for writ of mandamus moot by "voluntary cessation" of its efforts to ping-pong defendants between Nevada and Oregon. *See United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) ("Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave 'the defendant … free to return to his old ways.'") (internal quotations and quoted authority omitted).

The mere representations of a prosecutorial authority about intended future conduct are not sufficient to meet the heavy burden of establishing mootness. *See McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) ("A presumption of good faith, however, cannot overcome a court's wariness of applying mootness under 'protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.'") (quoting *United*

16

*States v. W.T. Grant Co.,* 345 U.S. 629, 632 n.5 (1953)). The government cannot meet its "heavy burden" and demonstrate with certainty that continued transport – or, perhaps more importantly, the harm that arises from simultaneous prosecutions – "makes[s] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 170.

### D. This Court Can Grant Meaningful Relief Despite the Intervening Execution of the Writ After the Filing of the Appeal.

There is no doubt that the harms the defendants sought to prevent – the triggering of speedy trial rights by arraignment on the case in Nevada, the resulting infringement on constitutional rights from simultaneous trial preparation, and the threat of additional involuntary transport out of state – have come to pass. This Court can nevertheless grant meaningful relief to the defendants. The defendants requested that this Court "reverse the district court's order, vacate the writs of habeas corpus ad prosequendum, and grant such further relief as law and justice require." Dkt. 5 at 33. Each of these remedies remain possible.

As argued in the pleadings, the Oregon District Court incorrectly ruled that the Nevada court had authority to authorize the writs as requested by the government. This Court should rule that federal district courts do not have the authority to interrupt the proceedings of a co-equal federal court by issuing writs to custodians of federal pretrial detainees outside their jurisdiction. On the basis of that

17

ruling, this Court would then reverse the district court's order, vacate the writs, and instruct the district court to enjoin the U.S. Marshals from again executing such writs, if any were again lodged against the defendants. *See, e.g., Dream Palace v. Cty. of Maricopa*, 384 F.3d 990, 1000, 1022 (9th Cir. 2003) (rejecting mootness challenge, holding portions of ordinance unconstitutional, and instructing the district court to enjoin disclosure to the public of information obtained under the ordinance). The government's contrary arguments about mootness presuppose its victory on the appellate issue: whether the writs themselves were valid.[8]

In addition, this Court has authority to grant further relief by ordering the defendants returned to the *status quo ante* before the writs were executed. In *Church of Scientology*, the Supreme Court determined that full return to the *status quo ante* was not possible on the facts of that case, because after the improper seizure and review of tape recordings, the agents' knowledge of the contents could not be erased. 506 U.S. at 12. Nevertheless, the Court recognized the availability of a partial remedy (the ordered destruction of existing tapes), which prevented the case from being moot. Similarly, in this case, the Court cannot return lost time or repair

---

[8] Even if the Court were to establish the writs were valid, the Court could still determine that the *ex parte* procedures the government utilized to obain the writs were unlawful.

disrupted trial preparation already caused by simultaneous prosecutions, yet the Court can order return to the *status quo ante* before the execution of the writs. Just as the withdrawal of a guilty plea provides for return to *status quo ante* by rendering null and void any court proceedings based on that plea, so should this Court's order vacating the writs also direct that any proceedings based on those writs – the arraignment of the transported defendants in Nevada, for example – are null and void. *See Lafler v. Cooper,* 132 S. Ct. 1376, 1388-89 (2012) (noting that remedial goal is to "neutralize the taint" of the constitutional violation and identifying proper remedy as order to prosecutor to reoffer a plea agreement).

## RELIEF SOUGHT

The defendants respectfully request this Court find the appeal is not moot and remains a live controversy, and exercise its authority under the collateral order doctrine or writ of mandamus to issue an order to grant the following relief:

(1) invalidate the Nevada writ of habeas corpus ad prosequendum as applied to this case;

(2) vacate the effects of the writ as previously executed to revert the parties to the *status quo ante*; and

(3)     bar future transports of defendants between the districts of Oregon and Nevada upon the issuance of a writ, absent consent of the defendants, for purposes of appearance in proceedings of cases being simultaneously prosecuted.

## CONCLUSION

Unless this Court exercises its powers of interlocutory review, the defendants will be left to simultaneously defend themselves against two complex criminal cases—each involving terabytes of data in discovery, hundreds of potential witnesses, and complex legal issues on a short timetable—in two separate jurisdictions roughly 1,000 miles apart while incarcerated. It is constitutionally impermissible to place the defendants in such a precarious position at the whim of the prosecution's charging decisions.  It is likewise impermissible to require the defendants to make a choice to either inadequately defend themselves against two cases at once or assert their constitutional rights in one case only to sacrifice them in the other. The defendants' interlocutory appeal and petition for writ of mandamus presents live issues that this Court must consider and resolve in the interests of justice.

Dated this 24th day of May, 2016.

/s/ Rich Federico
Rich Federico
Attorney for Defendant-Appellant
Ryan Payne

| 9th Circuit Case Number(s) | 16-30080 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*********************************************************************************

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) 

*********************************************************************************

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) May 24, 2016 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

C. Michael Arnold, Arnold Law, 401 E 10th Ave., Ste. 400, Eugene, OR 97401 (A. Bundy)
Todd E. Bofferding, 1215 B Street, P.O. Box 539, Hood River, OR 97031 (Cavalier)
Krista Shipsey, 820 SW 2nd Avenue, Suite 275, Portland, OR 97204 (Cooper)

Signature (use "s/" format) s/ Rich Federico